# JUAB COUNTY v. BAILEY et al.

## No. 2595.  Decided April 25, 1914 (140 Pac. 764).

MANDAMUS—DEFENSES—APPORTIONMENT OF TAX—STATE BOARD OF EQUALIZATION—HEARING—TIME.  Comp. Laws 1907, sec. 2566, as amended by Laws, 1909, chap. 63, requires every mining corporation to file a statement of the gross yield during the year with the State Board of Equalization on or before the second Monday of February.  Section 2560, as amended by Laws 1909, chap. 63, requires the board to assess the actual value of such proceeds, authorizing the owner at any time between the third Monday in May and the third Monday in June to apply to have the assessment corrected, after which the board is required to apportion the assessment to the several counties in which the mining claims are located.  Section 2561, as amended by Laws 1909, chap. 63, provides that the board on or before the fourth Monday in June shall transmit to the county auditor of each county to which an apportionment is made a statement of the property assessed and the assessed value of the same as fixed and apportioned to the county, which is to be apportioned by the county board, etc.  *Held* that, where a mining company incorrectly reported to the State Board of Equalization the gross yield of certain mines as located in U. County when they were largely located in plaintiff county, and under such report the assessed valuation was apportioned to U. County, plaintiff, after such apportionment and the rate of taxation had been fixed in accordance therewith, and all levies had been completed, could not maintain mandamus to compel the State Board of Equalization to grant a hearing and reapportion the assessed value of such mining property to plaintiff county.

Application for Writ of Mandamus by Juab County against William Bailey and others, constituting the State Board of Equalization.

WRIT DENIED.

*Powers, Marioneaux, Stott & McKinney* for plaintiff.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and *G. A. Iverson,* Assistant Attorneys-General, for defendants.

FRICK, J.

The plaintiff, Juab County, filled an original application to this court for a writ of mandate directed to the defendants William Bailey, Harden Bennion, John Watson and Amos S. Gabbott, "as the State Board of Equalization of Utah," to require said board to give the plaintiff an opportunity to present evidence to it and to grant it a hearing with respect to the apportionment of the net proceeds derived from what is known as the Iron Blossom mine, situate in both Juab and Utah Counties in this state, owned by the Iron Blossom Consolidated Mining Company. The board interposed a general demurrer to the application. The apportionment of the net proceeds derived from said mine was made by said board pursuant to the following provisions of our statutes: Comp. Laws 1907, section 2566, as amended by Laws Utah 1909, p. 99, in substance provides that every person or corporation engaged in metal mining "must each year make out a statement of the gross yield of the above-named metals or minerals from each mine owned or worked by such person, corporation or association during the year next preceding the first Monday in January and the value thereof." The statement must be verified and must be filed with the Board of Equalization "on or before the second Monday in February in each year." Any mining company or person who fails to furnish the statement within the time and in the manner prescribed by the statute is subject to punishment. Section 2560, as amended as aforesaid, in part provides that the State Board of Equalization must meet on the first Monday in March and continue in open session until the first Monday in May "and later if the business of the board requires it." At such meeting the board must "assess at their actual value at twelve o'clock m. on the first day of January of each year . . . the net actual proceeds of all mines or mining claims." All property must be assessed in the name of the owner and "as soon as such assessment is completed a copy of the same must be furnished to the owner. On the third Monday in May the board shall again reconvene in open session . . . and continue in session not later than

the third Monday in June and at said session the owner of any property assessed by said Board of Equalization may apply to have the same corrected in any particular and the board may correct and increase or lower the assessment made by it." After all applications for corrections are disposed of, the board must apportion the assessment made by it to the several counties as directed. With regard to the apportionment of the net proceeds, the statute provides, "The net proceeds of all mines and mining claims shall be apportioned respectively to the counties in which the mines or mining claims assessed for the same are situate." Section 2561, as amended, provides, "The State Board of Equalization shall, before the fourth Monday in June, transmit by mail to the county auditor of each county to which such opportionment has been made a statement showing the property assessed and the assessed value of the same as fixed and apportioned to the county." Upon receipt of the statement the county auditor is required to enter the same in the "assessment book or roll as aforesaid which shows the total value of all property for taxation of the county." The county commissioners, acting as a board of equalization for the county, after the receipt of the statement from the county auditor, must apportion the property assessed "to the several city, town, school, road, or other lesser taxing district in the county," in accordance with the provisions of the statute. Section 2563 provides, "If the owner of any property assessed by the State Board of Equalization is dissatisfied with the assessment made by such board such owner may, between the third Monday in May and the second Monday in June, apply to the board to have the same corrected in any particular and the board may correct and increase or lower the assessment made by it so as to equalize the same with the amount of other property in the state." Section 2584 prescribes specially the powers and duties conferred and imposed upon the State Board of Equalization. One of the duties imposed is that the board shall transmit "on or before the fourth Monday in June to the county auditor

of each county" the apportionment of the assessment made by the board.

We have thus stated the powers and duties of the State Board of Equalization with respect to the assessment and apportionment of property as well as may be in a general statement. The said board, after having ·complied with the foregoing provisions, must, before the last Monday of July of each year, determine the rate of the state tax to be levied and collected. Immediately after such rate is determined, the board must transmit the rate agreed upon to the county auditor of each county and also to the State Auditor. The county commissioners of each county "must, between the first Monday in July and the second Monday of August of each year, fix the rate of county tax." It will thus be seen that it is absolutely necessary that the assessment, equalization, and apportionment of all property be completed within a certain period of time which is prescribed by the statute for the reason that the rate of taxation can only be determined and the levies made for the purpose of raising the necessary revenues after the valuation and apportionments are finally determined and certified. The plaintiff in its application, however, alleges that in making its report to the State Board of Equalization the Iron Blossom Consolidated Mining Company did not truthfully state the facts with regard to the county from which the ores producing the net proceeds which were reported for assessment were taken. It is contended that the ores from which the net proceeds were derived were taken from mining claims situate in Juab County, but that notwithstanding that fact such mining company reported that the same were taken from Utah County, and that the said Board of Equalization adopted the report of said mining company and thus apportioned said net proceeds, or at least a very large portion thereof, to Utah County, when the same should have been apportioned to Juab County, the plaintiff herein. The plaintiff county is therefore, it is contended, deprived of a large amount of property for taxation. Plaintiff also alleges in its application for a writ that it was not aware of the fact that the min-

ing company had made the report as aforesaid until the 1st day of November, 1913, whereupon it, on the 14th day of that month, the day before the tax became delinquent, made an application to the State Board of Equalization to grant it a hearing and to allow it to produce evidence to prove that a specified amount of the net proceeds reported by said mining company should be apportioned to the plaintiff county and not to Utah County as was done by said board. The foregoing fact is alleged notwithstanding the fact that it is not denied that the apportionment as made by the State Board of Equalization was in fact transmitted to the proper officer of the plaintiff county in June as required by the statute. The State Board of Equalization refused to grant plaintiff its request, and hence this application.

We shall assume, without deciding and without expressing an opinion either way upon the question, that the State Board of Equalization has the authority to grant a hearing for the purposes stated in the application when such application is made to said board at any time before the apportionment on the net proceeds of mines is transmitted to the several counties as required by the statute. The question involved and to be decided now, however, is: Can this court by writ of mandate coerce said board to grant a hearing for the purposes aforesaid after the apportionments have been made, the rate of taxation fixed in accordance with such apportionments, and all levies have been made pursuant thereto? Plaintiff alleges that it has a legal right to have apportioned to it all the net proceeds derived from all mines and mining claims which are situated in Juab County, and hence it is the duty of the State Board of Equalization to make the apportionment to said county as the law requires and not in accordance with the incorrect report made by the mining company. It is further alleged that the statute fixes no time within which a protest may be made or a hearing had, nor does it provide for any notice to be given to any county of the filing of a statement by the mining company. It is also urged that the plaintiff had no knowledge of the falsity of the statement filed by the mining company until November

1st, at which time all the apportionments had been made and the rate of taxation had been determined. Of course, all the foregoing allegations, if material, are admitted by the general demurrer. But even though they be admitted, does the conclusion that plaintiff is now entitled to a hearing upon the question necessarily follow? We think not. The plaintiff county was charged with knowledge respecting the provisions of the statute the same as every one else is charged with knowledge thereof. It therefore knew that the mining company must report the net proceeds of its mine to the State Board of Equalization within the time fixed by the statute and that the board would within a certain time also fixed by the same statute have to apportion said net proceeds either to Utah County or to the plaintiff.

We are of the opinion therefore that, if plaintiff desired to assail the correctness of the report made by the mining company, it was required to do so at some time before the apportionment was finally transmitted. To require the State Board of Equalization to reopen the matter after it has made the apportionment and the rate of taxation has been determined must result in producing gross uncertainty with respect to the amount of revenue any particular county will receive for a particular year. Suppose it should ultimately be decided that Utah County should surrender $500,000 of net proceeds to Juab County after Utah County has determined the rate of taxation upon the whole amount of property within said county including said $500,000, will not the amount of revenue for Utah County be reduced very materially while the amount for Juab County will be correspondingly increased? Utah County may thus suffer a deficit in its revenues, while Juab County may have a surplus. The purpose of the statute in requiring certain things to be done within a certain time is to prevent such incongruous results. In view that under our Constitution no debt can be incurred or obligation assumed by any county in excess of the revenues derived from the assessment of property for the current year makes it unnecessary for us to further dwell upon the importance that time is of the es-

sence with regard to certain acts that must be performed either by the taxpayer or by the authorities who have in charge the assessment, apportionment, and determination of the tax rate. Nor does the allegation in the application that Utah County has been enjoined from disbursing the money derived from the net proceeds in question here help the matter. Indeed, it only emphasizes the fact that the amount of revenue a county may rely upon should not be kept in doubt and uncertainty. In the absence of an express provision of some statute to that effect, what power has the State Board of Equalization to grant a hearing the result of which might be the cause of frustrating the very purpose of the statute to which we have called attention? If there is no law requiring the State Board of Equalization to act in that regard, this court can create none.

Nor do we see why Juab County should be placed in a better plight than an aggrieved property owner would be. Suppose a property owner were excessively assessed, but failed to receive the notice of his assessment for some reason, and therefore failed to appear at the proper time and place to make his protest to the board of equalization, could he, after the whole matter had been closed, coerce that board by a writ of mandate to reopen his case and give him a hearing upon the matter? We think no one would so contend. It is urged, however, that in the taxpayer's case there is a notice provided, and if such a notice is issued and mailed as provided by the statute it is his misfortune that he does not receive it in time to make his protest. As regards the plaintiff's rights in the apportionment of net proceeds, it requires no notice, since it must know just when all persons engaged in mining within its limits must make reports respecting net proceeds for taxation. It also knows just when the apportionment thereof must be made. The taxpayer, however, cannot know in advance at what value his property will be assessed and hence he is powerless to act before receiving notice. It certainly would be impractical to require each taxpayer to visit the Board of Equalization to find out concerning his assessment. Besides, the statute provides for

notice in the case of a taxpayer, and the statute in these things must control. Assuming therefore that plaintiff may assail the correctness of the reports made by those engaged in mining, it has ample time and opportunity before the apportionment is transmitted to ask the State Board of Equalization for a hearing upon that matter if a hearing is necessary. If plaintiff can prevail in the present application, why can it not open up the apportionment made for the year 1912 and for the preceding year? Clearly the property owner who may have been excessively assessed would be denied such relief, and we cannot see how plaintiff can be given any greater rights. We are of the opinion that the authority of the State Board of Equalization to grant plaintiff's application is, to say the least, a matter of serious doubt. It is elementary that unless the right to have the act which is demanded from the officer, board, or tribunal is clear, and the duty to perform the same is equally clear, the writ will not issue.

Mechem on Public Officers, in sections 937 and 938, states the rule thus:

"Such being the nature and functions of the writ, it is well settled that it can be resorted to only for the purpose of enforcing the performance of a specific duty already existing and clearly imposed upon the officer either by express law or as one of the necessary functions or attributes of the office which he holds. It is but a restatement of the previous rule, and it is equally well settled, that the writ will not be issued to enforce a doubtful right, nor where the legal duty is not clear. And the party applying for the writ must show by his application that all the conditions exist which are necessary to create the duty. They must not be left to inference."

Nor does the maxim that whenever there is a wrong there is a corresponding remedy apply to the assessment, apportionment, and levy of taxes. Many irregularities which arise in the imposition and enforcement of taxes must go unredressed, either because the victim of the wrong does not move in time, or because in the nature of things redress is impracticable or is not provided for by law. Judge Cooley, in the concluding paragraph of his excellent work on taxa-

tion, sums up in most forcible terms the utter inability of the law to afford redress for all wrongs and irregularities in that regard. He says:

"It will be apparent from what has appeared in this chapter that many serious errors may be committed and many wrongs done in the exercise of the power to tax, which the parties wronged must submit to, because the law can afford them no redress whatever. All injuries which result from an exercise of political or legislative authority are to be included in this category; and these are often the most serious which, in matters of taxation, the people are visited with. In all such cases, the authority of the judiciary is confined to an inquiry into the jurisdictional question, and, if it appears that the political or legislative body has kept within the limits of its authority, the judiciary must pause there, and admit its incompetency to inquire into wrongs which, within those limits, may have been committed. The wrongs which spring from errors on the part of assessors are, in a large proportion of all the cases, as little susceptible of correction, unless the legislature shall have provided a remedy by statute. Courts of equity have but a limited jurisdiction, extending to few cases beside those in which the impelling motive on the part of the assessors has been to do injustice and inflict injury. The chief protection of the citizen must at last be sought in the intelligence and integrity of public officers, and where these fail, as too often they do, the injury must frequently prove irreparable." (2 Cooley, Tax'n, p. 1523).

But the right of the plaintiff to invoke the action of the State Board of Equalization and the authority of that board to grant the relief prayed for at this time and under the circumstances disclosed in the application are too doubtful to authorize us to coerce that board to grant the hearing requested by the plaintiff.

The peremptory writ should therefore be, and it accordingly is, denied, at plaintiff's costs.

McCARTY, C. J., and STRAUP, J., concur.