RICH COUNTY v. BAILEY et al., State Board of
Equalization.

No. 2839.     Decided January 12, 1916.     (154 Pac. 773.)

1. TAXATION—APPORTIONMENT BY STATE BOARD OF EQUALIZATION—
   CORRECTION.   Comp. Laws 1907, Section 2561, as amended by
   Laws 1909, c. 63, provides, relative to the apportionment of the
   property and franchises of railroad and other companies oper-
   ating in more than one county for purposes of taxation, that
   the state board of equalization shall before the fourth Monday
   in June transmit to the county auditor of each county a
   statement showing the property assessed and its assessed value,
   as fixed and apportioned to such county.  Section 2562 provides
   that on the second Monday in August the board of county com-
   missioners of each county must enter an order stating and de-
   claring the property assessed by the state board, and that such
   board shall apportion the assessed valuation of the property
   and franchises of railroad companies so apportioned to the
   county to the several city, town, or other lesser taxing districts
   in the county.  Section 2588, as amended by Laws 1909, c. 63,
   requires the state board, before the last Monday in July, to de-
   termine the rate of state tax, and Section 2593, as amended by
   Laws 1915, c. 111, requires the board of county commissioners
   of each county to fix the rate of county taxes between the last
   Monday in July and the second Monday in August.  Held that,
   where the state board by mistake apportioned to a county rail-
   road property which it afterwards became satisfied was lo-
   cated in and should have been apportioned to a different county,
   it had jurisdiction, at any time before the second Monday in
   August, to correct the error and make the apportionment to
   the proper county.[1]   (Page 382.)

2. TAXATION—APPORTIONMENT BY STATE BOARD OF EQUALIZATION—
   REVIEW BY CERTIORARI.  Where, owing to the topography of the
   country and the somewhat uncertain legislative description
   of the boundary line between R. and S. counties, the precise
   location of such line was doubtful, its location was a question
   of fact, and, where the state board of equalization acted in good
   faith and in accordance with its best judgment in determining
   where the boundary line was located and in apportioning rail-
   road property in S. county for taxation which it was claimed
   was situated in R. county, it did not exceed its jurisdiction so
   as to make its acts subject to a writ of certiorari, even though

[1] Distinguishing Juab County v. Bailey, 44 Utah 377, 140 Pac. 764.

Writ quashed and application dismissed.

it was afterwards determined by a higher authority that the property was in R. county.   (Page 385.)

3.  TAXATION—APPORTIONMENT BY STATE BOARD OF EQUALIZATION— CONCLUSIVENESS.  The state board of equalization, in apportioning railroad property, as to the location of the boundary between adjoining counties, is not conclusive with regard to any succeeding fiscal or taxing year.   (Page 386.)

4.  TAXATION—APPORTIONMENT BY STATE BOARD OF EQUALIZATION— CONCLUSIVENESS.  The state board of equalization's determination, in apportioning railroad property for taxation, as to the location of the boundary line between adjoining counties must at some time become conclusive for the current year, and that time arrives when all of the apportionments, including those to lesser taxing units, have been made and the taxes have been levied for the year.[2]   (Page 386.)

5.  TAXATION—APPORTIONMENT BY STATE BOARD OF EQUALIZATION— REVIEW BY CERTIORARI.  Where an application for a writ of certiorari to review the action of the state board of equalization in apportioning to S. county for taxation railroad property claimed to be located in R. county was not applied for until after the second Monday in August, the date on which apportionments were required to be made by the county commissioners of the several counties of the state to the lesser taxing units, and the board did not clearly exceed its powers or jurisdiction, a peremptory writ would not be granted, in view of the disturbance of apportionments and tax levies in S. county and the mischievous consequences which would result.[3]   (Page 386.)

*Certiorari* by Rich County against William Bailey and others constituting the State Board of Equalization of the State of Utah.

Writ quashed and application dismissed.

*Howat, MacMillan & Nebeker* for plaintiff.

*P. H. Neeley* and *A. R. Barnes, Atty. Gen.,* for defendants.

FRICK, J.

On the 11th day of August, 1915, one W. T. Rex, as chairman of the board of county commissioners of Rich County,

---

[2] *Juab County* v. *Bailey*, 44 Utah 377, 140 Pac. 764.

[3] *Juab County* v. *Bailey*, 44 Utah 377, 140 Pac. 764; *Crosby* v. *Probate Court*, 3 Utah 53, 5 Pac. 552.

filed an application in this court in behalf of said county praying for a writ of *certiorari*. In the application he prayed that William Bailey, John Watson, Harden Bennion, and Amos G. Gabbot, constituting the state board of equalization of Utah, hereinafter called defendants, be required by this court to show cause why said defendants should not annul certain acts or proceedings relating to the apportionment of certain railroad property, which proceedings, it was alleged, are illegal. In said application, after stating the necessary matters of inducement, it was, in substance, alleged that the Union Pacific Railroad Company, hereinafter called company, owned and operated a certain line of railroad through certain counties of this state, and that a portion of such railroad is in Rich County and is subject to taxation therein; that on the 16th day of February, 1915, said company filed with said defendants a statement as required by law showing the number of miles of main line and the length of side tracks it owned in said Rich County; that thereafter said defendants duly assessed the whole line of railroad and side tracks in Utah, and on the 15th day of June, 1915, as required by law, duly assessed that portion of said railroad which is within said Rich County, together with other property connected therewith, and thereafter apportioned said property for taxation to said county; that thereafter and prior to the fourth Monday of June, 1915, as required by our statutes, the said defendants transmitted to the auditor of said Rich County a statement showing the assessment they had made of said line of railroad within said county, and that such assessment amounted to the sum of $113,019, and in said statement it was also made to appear that the defendants had apportioned the amount of said assessment to said Rich County for taxation; that thereafter, to wit, on the 29th day of July, 1915, said defendants, without authority, and in excess of their jurisdiction, rescinded their said order and action by which they had apportioned said sum of $113,019 to said Rich County, and apportioned the same to Summit County; that the acts of said defendants in rescinding said apportionment made to Rich county and in reapportioning the same to Summit County were without authority, and that the plaintiff thereby is deprived of the tax

which is levied upon said railroad and other property within said county, and that it has "no plain, speedy, or adequate remedy at law." A writ of *certiorari* was duly issued by this court requiring said defendants to show cause why the acts and proceedings complained of should not be annulled. The defendants, at the time fixed in the writ, appeared through the Attorney General and demurred to the application. The parties were heard on the demurrer, and at the conclusion of the hearing, without passing upon the same, we required the defendants to certify up the record of the proceedings which are complained of in said application. The defendants accordingly certified up the whole proceedings which are now before us.

From the return made by the defendants it appears that the portion of the railroad in question here had during all of the past years been regarded as lying within Summit County, and not as being in Rich County; that said railroad line had always been assessed in Summit County and apportioned for taxation to said county; that for the year 1915 the tax officer of said railroad company filed the tax statement required by our statute with the defendants; that in said statement said officer returned 4.98 miles of the main line of railroad and .82 of a mile of side track for taxation in Rich County, and that the attorney for said company demanded that said mileage be assessed in Rich County; that pursuant to said return and demand the defendants assessed the number of miles aforesaid as being in, and apportioned the same for taxation to, said Rich County; that after said apportionment had been made Summit County, in which said 4.98 miles of main line and said side tracks had always been assessed and apportioned, protested against apportioning the same to said Rich County, and, after investigating the matter, said defendants became convinced that they had erred in making said apportionment to said Rich County, and on the 29th day of July, 1915, rescinded their action by which said mileage was apportioned to said Rich County, and apportioned the same for taxation to Summit County, to which county the same had always been apportioned, as before stated.

Counsel for plaintiff vigorously insist that, inasmuch as it

is provided by Comp. Laws 1907, Section 2561, as amended by chapter 63, Laws Utah 1909, the defendants "shall before the fourth Monday of June" in each year make and transmit the apportionment of railroad property to the respective counties in which it is located and is assessed, they exceeded their power of jurisdiction in changing the apportionment from Rich to Summit County as before stated. It is further contended that such is the effect of our holding in the case of *Juab County* v. *Bailey*, 44 Utah 377, 140 Pac. 764. In that case we had before us an application by Juab County for a writ of mandate, which application was filed on the 1st day of November, 1913, and in which we were asked to require the defendants to reconvene as a state board of equalization and to require them to hear evidence upon and determine the question whether the net proceeds of a certain mine should or should not be apportioned to said Juab County which had theretofore been apportioned to Utah County in the preceding June of that year. The gist of that decision is correctly reflected in the headnote in the following words:

"Held that, where a mining company incorrectly reported to the state board of equalization the gross yield of certain mines as located in U. county, when they were largely located in plaintiff county, and under such report the assessed valuation was apportioned to U. county, plaintiff, after such apportionment and the rate of taxation had been fixed in accordance therewith, and all levies had been completed, could not maintain mandamus to compel the state board of equalization to grant a hearing and reapportion the assessed value of such mining property to plaintiff county."

It is quite true that there is language used in the opinion from which it might be inferred that after the defendants had made and transmitted the apportionment to the several counties, which they must do not later than the fourth Monday in June of each year, they had no further jurisdiction or power in the premises, but a careful reading of the opinion shows that what was actually decided is expressed in the portion of the headnote which we have quoted above. The headnote is squarely based upon what is said in the opinion. In referring to the question to be decided, we, in the course of the opinion, said:

"The question involved and to be decided now, however, is: Can this court by writ of mandate coerce said board to grant a hearing for the purposes aforesaid *after the apportionments have been made, the rate of taxation fixed in accordance with such apportionments, and all levies have been made pursuant thereto?*" (Italics mine.)

It is conclusively shown that we there had in mind the additional apportionments which are required to be made by the county commissioners as will hereinafter appear, the determining of the tax rate and the making of the levies, and not only the single apportionment which must be made on the fourth Monday of June by the defendants. Moreover, in concluding the opinion, we said:

"But the right of the plaintiff to invoke the action of the state board of equalization and the authority of that board to grant the relief prayed for at this time and under the circumstances disclosed in the application are too doubtful to authorize us to coerce that board to grant the hearing requested by the plaintiff."

That application was made in November, when the apportionment there in question had been made on or before the fourth Monday in June. Section 2562, which was then and is now in force, and which we had in mind then, provides:

"On the second Monday in August the board of county commissioners of each county must take and cause to be entered in the proper record an order stating and declaring the property assessed by the state board of equalization apportioned to such county; and the said board of county commissioners, acting as a board of equalization for said county, shall in like manner apportion the assessed valuation of all the property and franchises of railroad, * * * companies, so apportioned to said county by the state board of equalization, to the several city, town, school, road, or other lesser taxing districts in the county."

In section 2588, as amended by Laws 1909, p. 105, it is provided that the defendants, before the last Monday in July of each year, must determine the rate of state tax which is "to be levied and collected upon the assessed valuation of the property of the state," that is, the property assessed within the state. Section 2593, as amended by Laws 1915, p. 191, Section 1, provides:

"The board of county commissioners of each county must, between the last Monday in July and the second Monday in August in each year, fix the rate of county taxes."

On that day all the levies must also be completed.

All of the foregoing provisions were therefore in our minds, although they were not all stated or referred to in the opinion in *Juab County* v. *Bailey, supra,* and the result in that case was based upon all of them.

We are still of the opinion, and adhere to the ruling, that, after the apportionments have been made and certified to the several counties, the defendants ought not to be, and cannot be, coerced by mandamus to grant a hearing for the purpose of changing an apportionment regularly and timely made to one county and reapportion the same to another county. Within that statement, however, is not included the further proposition that in case the defendants had arbitrarily, capriciously, or wrongfully made an apportionment to a county which clearly was not entitled thereto, or, if they, by mistake, had apportioned property to one county which clearly and manifestly should have been apportioned to another, they could not be compelled to correct the wrong in the first instance, or could not on their own motion or at the instance of others correct the error in the second, provided the application to correct the wrong was made so that it could be heard and determined before the second Monday in August, and the error was corrected before that time, which is the date on which all the apportionments must be completed to all of the lesser taxing units of the several counties and at which time the rate of taxation must be fixed and all the levies made. In *Juab County* v. *Bailey, supra,* the county had delayed making its application until all of the apportionments had been made to the lesser taxing units of the several counties and after the rate of taxation had been determined and the levies had been made, although it could have made its application at any time after the second Monday in February and before the fourth Monday in June. Then, again, its claim was one that was, to say the least, doubtful. To our minds there is a substantial difference between such a case and one where it is clear that the

defendants have acted arbitrarily or capriciously, or where they were mistaken in making an apportionment.

Where there is doubt with regard to whether a certain assessment should be apportioned to one county or to another, and the question is one of fact, and the defendants have passed upon the facts, then neither this nor any other court can control their action. If, as appears from the record before us, the precise point where the boundary line between Rich and Summit counties is located is doubtful, and the same must be established by measurements or surveys, then the question of where the boundary line should be located is one of fact, and, if the defendants have acted in good faith and in accordance with their best judgment in determining the boundary line, they have neither exceeded their jurisdiction nor power so as to make their acts subject to the writ of *certiorari;* nor can they be compelled to change their action by writ of mandate. The record discloses that, owing to the topography of the country and the somewhat uncertain legislative description of the boundary line between Rich and Summit counties, the precise point where it should be fixed is in doubt. Since it is the duty of the defendants to assess all of the railroad lines, side tracks, and other railroad property, and to apportion the same to the counties in which the railroad lines and side tracks are located, it is their duty, in case of doubt, to determine in what county a particular portion of the tracks is located, and their judgment in that regard, if honestly and conscientiously exercised, must prevail until the boundary line is determined and fixed upon the ground by some authority higher than theirs. There is—there can be— no escape from that conclusion. In view of all the facts and circumstances and the evidence that was before them, as disclosed from their return, the defendants were justified in believing that they had erred in making the apportionment to Rich County, and, in view that the error was corrected before the final apportionments had been made by the county commissioners and before the tax levies had been determined upon and made, we think the defendants had full power or jurisdiction in the premises.

If it should hereafter be determined by a higher authority

that the railroad line in question is, in fact, in Rich County, and not in Summit County, such determination, under the circumstances, would not militate against the defendants' jurisdiction, but would only establish the fact that **3, 4, 5** they were in error in determining the county line. Under our statutes *certiorari* cannot be resorted to for the purpose of correcting mere errors unless the errors occur through acts in excess of jurisdiction. So long as the county line between the two counties remains in doubt, the defendants must determine where such boundary is as best they can, which, it seems, they did. Of course, their determination for one fiscal or taxing year is not concluisve with regard to any other succeeding year. For the reasons pointed out in *Juab County* v. *Bailey, supra,* the boundary line must, as a matter of necessity, at some time become conclusive for the instant year, and that time, under our statute, arrived when all of the apportionments, including those to lesser taxing units, have been made, and the taxes have been levied for the year. An attempt to disturb the apportionments after that time might result in much mischief. Moreover, when that time has arrived there is no longer any authority given by the statute to make further changes or corrections. In this case the apportionment which is complained of was made at least ten days before the final apportionments of the county commissioners could have been made, as appears from section 2562, *supra.* Counsel for plaintiff have cited a number of cases which, they insist, support their contention that the defendants exceeded their jurisdiction in reapportioning the assessment in question to Summit County. After a careful consideration of those cases, however, we do not see how anything therein decided in any way militates against or affects the foregoing conclusions. We are of the opinion, therefore, that the alternative writ heretofore issued should be quashed.

There is, however, another reason why the peremptory writ of *certiorari* should not issue in this case. As we have seen, the application for that writ was not made until the 11th day of August, 1915, or two days after the second Monday of August, the date on which the final apportionments were required to be made by the county commissioners of the several coun-

ties of this state to the lesser taxing units. If the writ were sustained, therefore, we would· be required to do precisely what we in *Juab County* v. *Bailey, supra,* held. ought not to be done, namely, disturb all the apportionments and tax levies for the year 1915 in Summit County. In 6 Cyc. 747, the law upon this subject is stated to be that the writ should not be granted "where, should the writ be granted, and the proceedings be quashed or reversed, mischievous consequences would ensue and the parties or third persons could not be placed *in statu quo.*" It is further said (page 748):

"Where great public detriment or inconvenience would or might have resulted from interfering with the proceedings of public bodies which exercise rights in which the people at large are concerned, and no substantial injury would result from its refusal, the writ has been denied, and its allowance in such cases is discretionary."

The foregoing text is sustained by the great weight of authority. *Crosby* v. *Probate Court,* 3 Utah 53, 5 Pac. 552; *Hager* v. *Supervisors, etc.,* 47 Cal. 228; *Keys* v. *Marin County,* 42 Cal. 255; *Rutland* v. *County Com'rs,* 20 Pick. (37 Mass.) 79; *People* v. *Mayor, etc.,* 2 Hill (N. Y.) 12; *Woodworth* v. *Gibbs,* 61 Iowa 398, 16 N. W. 287; *Meads* v. *Belt Copper Mine,* 125 Mich. 456, 84 N. W. 615; *Cavanagh* v. *Bayonne,* 63 N. J. Law 179, 43 Atl. 442. We do not mean to be understood as holding that, where it is clearly made to appear that an inferior tribunal has exceeded its powers or jurisdiction, the writ should be granted or withheld at the discretion of the court, but what we mean, and now hold, is that, where, as is the case here, the proceedings complained of are not clearly beyond the jurisdiction or power of the tribunal or body who made them, and where, as here, to set aside the proceedings and to annul them would cause mischievous consequences, in that it would or might seriously affect the revenues of Summit County, the writ should be withheld, and especially so since the application was not made until the time within which all the apportionments to the lesser taxing units and for the levying of all the taxes had fully elapsed.

It is therefore ordered that the writ heretofore issued be, and the same is, quashed, and the application is dismissed at plaintiff's costs.

McCARTY, J., concurs.

STRAUP, C. J., concurring.

It is claimed by the plaintiff that there is about 5.8 miles of railroad owned by the Union Pacific Railroad Company in Rich County and which ought to have been assessed in that county. The board assessed it as being in Summit County. We, on *certiorari*, are asked to annul that ruling. I think it was within the province of the board to determine whether the disputed property was within the one of the other county, and that the exercise of the board's discretion in such a matter cannot be controlled, except for an abuse of discretion. On a review of the board's proceedings as returned to us I do not find that the board acted arbitrarily, capriciously, or otherwise abused its discretion, or evaded any positive duty. To the contrary, I think it appears that its ruling was based on evidence and upon an investigation as to whether the property is within the one or the other county. True, on the statement made by the railroad company the board first assessed the property as being in Rich County, but, when its attention was called to the matter, and upon investigation and ascertaining the facts, it rescinded that action and assessed the property as being in Summit County. This, it is said, the board then was without power to do. For the reasons stated by Mr. Justice FRICK, I think the board then had such power, and that it acted within its jurisdiction. Whether it decided the question right or wrong is not the point. It is sufficient that the board acted within its power, and not in abuse of its discretion.