Ririe v. Randolph et al., 51 Utah 274

RIRIE, STATE AUDITOR v. RANDOLPH, COUNTY
ASSESSOR, et al.

No. 3133.   Decided December 21, 1917.   (169 Pac. 941.)

1. MANDAMUS—STATE AUDITOR—MAINTAINING ACTION.   Comp. Laws
1907, section 2421, subd. 15, empowering the state auditor to bring
suits for official delinquencies in tax matters, authorizes mandamus
proceedings against county officials to enforce the proper assessment
of coal lands. (Page 276.)

2. MANDAMUS—PUBLIC OFFICIALS—TIME FOR ACTION.   Mandamus can-
not be maintained against a delinquent public official if his func-
tions regarding the matter involved are ended. (Page 276.)

3. MANDAMUS—TAX ASSESSMENTS—TIME FOR SUIT.   Mandamus to
compel county officers to properly assess coal lands cannot be main-
tained after the assessment had been completed, taxes equalized,
rate established, funds apportioned, and the assessment roll had
passed beyond defendants' control, although Comp. Laws 1907,
section 2545, confers certain powers regarding property which had
escaped taxation.[1] (Page 276.)

4. TAXATION—ASSESSMENT—COAL LANDS.   Const. art. 13, sections 2-4,
and Comp. Laws 1907, sections 2504, 2506, requiring coal lands
secured from the United States to be assessed at purchase price
and other coal lands at actual value, prohibits a blanket assessment
of all coal lands in the county at a flat rate. (Page 278.)

5. EVIDENCE—JUDICIAL NOTICE—VALUE OF COAL LANDS.   Judicial no-
tice will be taken that coal lands secured from the United States
were not purchased at a uniform price, and that those purchased
from the state are not of a uniform value. (Page 278.)

Original mandamus proceedings by Joseph Ririe, State
Auditor, against Benton Randolph, County Assessor of Car-
bon County, and others.

Alternative writ quashed, and peremptory writ denied.

*Dan B. Shields,* Atty. Gen., and *Jas. H. Wolfe* and *O. C.
Dalby,* Asst. Attys. Gen., for plaintiff.

---

[1] *Juab County* v. *Bailey,* 44 Utah 377, 140 Pac. 764; *Rich County* v.
*Bailey,* 47 Utah 378, 154 Pac. 773.

*C. S. Price* and *Thomas Fouts* for defendants.

THURMAN, J.

This is an original proceeding in mandamus instituted by Joseph Ririe, as state auditor, against the defendants, as county assessor and county commissioners of Carbon County. The application for the writ was filed August 25, 1917, charging the defendants with making an erroneous assessment of the coal lands situated in Carbon County, and praying that a writ of mandate issued to said defendants commanding them to correct said erroneous assessment, or show cause at a time and place to be specified in the writ why they should not do so. An alternative writ was issued, and the defendants duly appeared and filed their return and answer thereto, and at the same time demurred to the writ on the grounds that the same did not state facts sufficient to entitle the plaintiff to the relief demanded.

Plaintiff's grievance against the county assessor is that he erroneously assessed all the coal lands in said county, both those purchased from the United States and those purchased from the state, at a uniform rate of $50 per acre, notwithstanding the law required him to assess the coal lands purchased from the United States at the price paid the government therefor, and those purchased from the state at their actual cash value. The wrongs charged against the county commissioners are that they failed to equalize and correct said erroneous assessment, but, on the contrary, certified the same to the county treasurer for the collection of taxes thereon. It is further charged by the plaintiff that said coal lands were purchased from the United States at prices ranging from $10 to $350 per acre, and that the coal lands purchased from the state ranged in value from $50 to $10,000 per acre, and that because of said erroneous assessment the state of Utah would be deprived of revenue in the form of taxes to the extent of many thousands of dollars.

Defendants' demurrer to the writ presents many questions for the consideration of the court, but, with the exception of

the charge that the plaintiff is not authorized to bring this action, and that there is a defect of parties defendant, all of the substantial objections raised by the demurrer go to the point that the writ does not state facts sufficient to entitle the plaintiff to the relief demanded.

As to the authority of plaintiff, as state auditor, to institute a proceeding of this kind, we are of the opinion **1, 2, 3** that the law creating his office and defining his duties gives him ample authority. Comp. Laws Utah 1907, section 2421, subd. 15, in part reads as follows:

"To direct and superintend the collection of all money due the state, and institute suits in its name for all official delinquences in relation to the assessment, collection, and payment of the revenue," etc.

We have no doubt that the state auditor is clothed with authority to prosecute an action of this kind for an official delinquency of the nature charged in the writ whenever such action is seasonably commenced and is not objectionable for other reasons. The demurrer charges that there is a defect of parties in the failure to join the members of the state board of equalization, the county auditor, and the county treasurer of Carbon County as defendants. Concerning this objection but little need be said. Whenever it is necessary to commence an action against a public officer or officers for malfeasance in office or neglect of some official duty, the good sense and judgment of the authority instituting the proceeding will readily suggest who are the proper parties defendant. In a case of this nature, if commenced in time, it may be that the assessor is the only party necessary, as a defendant, to the obtaining of adequate relief. It may appear that he alone is delinquent. In such case, if other parties are necessary at all, it may only be for the purpose of staying their official action under the law until the matter can be judicially determined. It will all depend upon the stage of the proceeding at which the action is commenced. One principle, if borne in mind, will prove to be an infallible guide. The court cannot require the performance of that which is impossible. It is of no avail in an action of this kind to institute proceedings against a public

officer no matter what his delinquencies are, if his official functions with respect to the matter in question are ended, and his power to perform the requirements of the mandate completely gone. This can nearly always be determined from the plain written law; for ordinarily statutes relating to the assessment and collection of taxes, as to the time of each official act, are written with precision and in plain, unequivocal language. The serious difficulty, and the only serious one for the plaintiff in the present case, is that the action was not commenced in time; for, while many questions are presented and argued, some of which, viewed from a technical standpoint, having more or less merit, nevertheless, as to them, the proceedings were amendable, and without serious trouble or inconvenience to the parties could have been put in shape so that the questions presented might have been adjudicated in this proceeding. But the application was not filed in time. It was not filed in this court until the 25th day of August of the present year. At that time the assessment had been completed, the taxes equalized, the rate established, the funds apportioned, and the assessment roll had passed entirely beyond the control of every party defendant in this proceeding. The official power of these parties in respect to the matters complained of had completely expired under the statutes of this state, and this court cannot, without authority of law, clothe them with power to correct the wrongs complained of. If they have not the power to perform under the law, we cannot require performance at their hands. This principle is elaborately discussed and elucidated by Mr. Justice Frick in an opinion by this court in the case of *Juab County* v. *Bailey et al.*, 44 Utah, 377, 140 Pac. 764. See, also, *Rich County* v. *Bailey et al.*, 47 Utah, 378, 154 Pac. 773. These well-considered cases clearly enunciate the principles by which we are governed in cases of this kind. They also appear to be in harmony with the law generally in other jurisdictions, and need not be further elaborated in this opinion.

In stating that the functions of these officers had expired we are not unmindful of the provisions of Comp. Laws Utah 1907, section 2545, relating to property that has escaped taxa-

tion which may be discovered by the assessor and conferring upon him power in relation thereto. But that provision of the statute has no application to the present case.

Nothwithstanding, for the reasons above stated, the application for a peremptory writ must be denied, it must not be considered by the parties to this action that this court lends its approval to the delinquencies complained of in the application. We are disposing of this case on the demurrer alone. The demurrer confesses the delinquencies charged in the writ. This being a public question and one of extreme importance to the people of this state, we feel that this court would itself be delinquent in the discharge of its official duty if it did not express its emphatic disapproval of the conduct of the defendants herein with respect to the matters complained of. The Constitution of this state (article 13, section 4) provides that coal lands purchased from the United States shall be assessed at the price paid the government therefor. Sections 2 and 3 of the same article provides for the assessment of other property, which includes coal lands not purchased from the government, at its actual value. These provisions are reiterated and affirmed in Comp. Laws Utah 1907, sections 2504 and 2506. The language both of the Constitution and the statute is plain and unequivocal, and capable of being understood by any layman in the state. How any public official charged with the duty of assessing property for the purposes of taxation under the laws of Utah, whether he be a county assessor or county commissioner, could conceive it to be a compliance with the law and the obligations of his oath of office to make a blanket assessment, at a flat or uniform rate, of all coal lands in any county of the state, is more than this court can understand. It is perhaps not going too far, and is only just and fair to public officers who may be charged with similar duties in the future, to say that, if this action had been commenced in time, as suggested in the foregoing remarks, the court would have considered itself bound to grant the writ and enforce the mandate prayed for in the application. We cannot but take judicial notice of the fact that the coal lands purchased from the United States were

not purchased at a uniform price per acre, and that the coal lands purchased from the state are not of uniform value. On the face of the proceedings we therefore feel justified in holding that the assessment of all these lands at a uniform rate per acre was a flagrant disregard of the plain provisions of both the Constitution and the law of the state, and it is confidently assumed by the court, after this emphatic expression of its opinion, that official delinquencies of a similar nature in the future will not occur.

For the reasons above stated, the alternative writ heretofore issued is quashed, and a peremptory writ denied.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.