STATE EX REL. HINZ, RELATOR, *v.* MOODY, COUNTY CLERK. RESPONDENT.

(No. 5,621.)

(Submitted October 20, 1924.  Decided November 10, 1924.)

[230 Pac. 575.]

*Mandamus — Taxation—Coal Lands Purchased from Federal Government — Rate of Taxation — Constitution — Construction — Rules — Doctrine of Last Antecedent — Motion to Quash—Effect.*

Writs—Motion to Quash has Effect of Demurrer.
   1.  A motion to quash an alternative writ performs the same functions as a demurrer and therefore admits as true all matters properly pleaded in the petition.

Taxation—Coal Lands Purchased from Government—Rate of Taxation —Constitution.
   2.  *Held*, that coal lands purchased from the federal government must be taxed under section 3, Article XII, of the Constitution at the price paid therefor and not at thirty per cent of such purchase price, the rate at which real property is taxable under the Classification Act (secs. 1900 and 2000, Rev. Codes 1921).

Same—Mining Property—Purpose of Constitutional Provision.
   3.  The purpose of the framers of the Constitution in adopting section 3, Article XII, was to provide a special method for the

assessment and taxation of mining property, the theory adopted being that such property should be regarded real as to surface value, and personal as to the subsurface contents.

Constitution—Interpretation—Rules.

4. In the interpretation of a constitutional provision the facts that the instrument is a restriction upon the powers of the several departments of the state government, that division of it into chapters and sections is a mere matter of convenience for the purpose of reference and of no significance in applying the rules of interpretation, and that every provision must be considered in determining the meaning of any expression which is in doubt must be kept in mind.

Same—Interpretation—Intent of Framers—Presumptions.

5. The function of courts in construing a constitutional provision is to give effect to the intent expressed in it as found in the instrument itself, and the presumption obtains that the language used was employed with sufficient precision to convey it and that words have been employed in their natural and ordinary meaning.

Same—Meaning of Instrument Fixed When Adopted.

6. The meaning of the Constitution was fixed when it was adopted and cannot be different at any subsequent time, it being left to the people themselves to make such changes as new circumstances may require.

Taxation—Coal Lands Purchased from Federal Government—Constitution—Construction—Doctrine of the Last Antecedent.

7. *Held,* under the doctrine of the last antecedent, that the words "as provided by law" appearing in the second clause of section 3, Article XII, of the Constitution, providing for the taxation of the surface ground of mining property used for other than mining purposes, has reference to that clause and do not qualify the preceding one declaring that mining claims containing coal, *etc.,* shall be taxed at the price paid the United States therefor.

Same—Value Fixed by Constitution—Uniformity Rule not Applicable.

8. Where the Constitution fixes the value at which property shall be taxed, the uniformity rule does not apply.

Same—Taxation—Constitution—Inequalities not Matter for Relief by Courts.

9. That inequalities may result from a holding that coal lands purchased from the United States must be taxed at the price paid therefor as declared by section 3, Article XII, of the Constitution, does not justify a court to hold otherwise.

Original application for writ of *mandamus* by the State of Montana, on the relation of E. A. Hinz, against Norman M. Moody, as County Clerk of Musselshell County. Petition dismissed.

*Mr. V. D. Dusenberry,* for Relator, submitted a brief and one in reply to that of Respondent, and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Angstman* argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, delivered the opinion of the court.

This is an original proceeding instituted by the relator for the purpose of obtaining a writ of mandate, directed to the respondent as county clerk of Musselshell county, Montana. For reasons which are obvious, we deem it advisable to set forth the material allegations of the petition, which are:

That relator is, and for several years last past has been, the owner of the following described real estate, situated in the county of Musselshell, Montana, to-wit: Lots 9, 10, 15 and 16, section 4, township 8 north, range 31 east of the M. P. M.; that said lands are what are known as coal lands, which were originally purchased by relator from the United States under the federal coal land laws, at the price of $20 per acre; that prior to the purchase of said lands by the relator, and while they were a part of the public domain of the United States, said lands were examined by the United States Geological Survey, classified as coal lands and appraised at the value of ·$20 per acre; that said lands have been assessed for taxes to relator for the year 1924 at the price paid the government therefor; that respondent, as county clerk of Musselshell county, Montana, is about to calculate and extend upon the assessment-books of said county the real estate herein described upon the basis of 100 per cent of its assessed valuation.

"That on the third day of October, 1924, relator demanded of respondent that said lands be placed in class 4 of section 1999, Revised Codes of 1921, and that said tax be calculated and extended upon the basis of thirty per cent of the assessed valuation thereof, but respondent refused to make such classification, calculation and extension, and, unless

otherwise commanded by this court, respondent will place said lands in class 1 of section 1999, Revised Codes of 1921, and will calculate and extend said taxes on the basis of 100 per cent of said assessed valuation."

"That, unless respondent is compelled by an order of this court to calculate and extend said taxes on the basis of thirty per cent, relator's lands will have imposed upon them a tax excessive by seventy per cent of that which is lawfully due and collectible; that relator will be unable to pay the amount of said taxes when calculated on the basis of 100 per cent of the assessed value, and the land herein described will be sold for taxes; and that relator has no plain, speedy or adequate remedy in the ordinary course of the law." The reasons for bringing this action in this court are set forth.

The relief prayed for is that a writ of mandate issue, commanding respondent to calculate and extend the taxes for the year 1924 upon the lands described in the petition upon thirty per cent of the assessed value thereof. An alternative writ of mandate was issued. Respondent moved the court to quash the writ, for the reason, as set forth in such motion, that the petition does not state facts sufficient to warrant its issuance. [1] The motion to quash performs the same functions as a demurrer, and therefore the respondent admits as true all matters properly pleaded in the petition.

It is relator's contention that the character of property described in the petition is included within the provisions of [2] subdivision 4 of section 1999 of the Classification Law, so called (Chap. 159, Pol. Code 1921), and that therefore the tax should be calculated upon thirty per cent of the purchase price paid for such property, as provided by section 2000, Revised Codes of 1921. On the other hand, the respondent contends that section 3 of Article XII, of the Constitution fixes the standard of value of that character of property described in the petition; that the Classification Law above mentioned has no application to such property, and that therefore

the tax should be computed upon the full price paid to the United States therefor.

By Act of Congress of March 3, 1873 (17 Stats. at Large, 607; 6 Fed. Stats. Ann., 2d ed., 593 [U. S. Comp. Stats., sec. 4659], it is provided that: "Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall, upon application to the register of the proper land office, have the right to enter, by legal subdivisions, any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority, not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands, where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road." This Act provides the means whereby the coal lands of the United States may be acquired by certain individuals or associations composed of such persons.

From the allegations of the petition *supra*, it will be noted that the property in question consists of coal lands classified and approved as such by a department of the United States government, and purchased from it by the relator at the price of $20 per acre. The Constitution of Montana was adopted by our constitutional convention and ratified by the people of Montana in 1889. The Act of Congress of March 3, 1873, *supra*, was therefore in force at the time of the adoption and ratification of our Constitution; and we think it may fairly be assumed that the framers of our Constitution had in mind this Act of Congress when the provisions of section 3 of Article XII, of the Constitution were under consideration.

It is unnecessary for us to now consider the question whether or not the property involved herein constituted "mining claims," within the meaning of section 3 of Article XII above,

for counsel for respondent assert in their brief "that the lands (meaning those described in the petition) constituted mining claims, there can be no doubt," and counsel for relator tacitly agrees to this proposition in his reply brief, and each of the counsel for the respective parties so stated in oral argument.

By the enactment of Chapter 159 of the Political Code (sections 1999 and 2000, Rev. Codes 1921), the legislature classified, for the purpose of taxation, the property of this state. The provisions of this law, in so far as the same are relevant to the matter on controversy herein, are:

Section 1999. "For the purpose of taxation, the taxable property in this state shall be classified as follows: * * * Class four. All land, town and city lots, with improvements, manufacturing and mining machinery, fixtures and supplies, except as otherwise provided by the Constitution of Montana."

Section 2000 provides: "As a basis for the imposition of taxes upon the different classes of property specified in the preceding section, a percentage of the true and full value of the property of each class shall be taken as follows: * * * Class 4. Thirty per cent of its true and full value."

In the case of *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477, this court, referring to sections 1999 and 2000, said: "The Act in question has nothing whatever to do with either the assessment of property or the determination of the rate of the tax levy. It is not directed to the assessor. His duties are defined by the statutes in force when this measure was enacted."

If the character of property described in the petition herein is properly included within the provisions of subdivision 4 of section 1999, *supra,* then certainly the tax thereon must be computed upon thirty per cent of the value.

Section 1 of Article XII, Constitution, provides: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all

property, except that specially provided for in this Article."
Thus a duty is enjoined upon the legislative department of the
state government.    Speaking of section 1, this court, in the case
of *Northern Pac. Ry. Co.* v. *Musselshell County,* 54 Mont. 96,
169 Pac. 53, among other things, says: "As expressive of the
purpose that all property should bear its just proportion of the
burden of supporting and maintaining the government, the
convention adopted section 1.    Under this it became the duty
of the legislature to provide for a uniform rate of assessment
and taxation, upon a just valuation of all property, except as
otherwise provided in other sections of the Article.    By section
16 it was made the duty of the legislature to provide generally
the manner of assessment, except as otherwise provided, there
being added a specific provision as to who should assess rail-
road property.    *   *   *   In section 2 it provided for exemp-
tions, enumerating what property was to be absolutely exempt,
and what the legislature might, in its discretion, exempt."

Solely for convenience we will subdivide section 3 of Article
XII into four parts, numbering these parts with letters (a),
(b), (c), and (d), respectively, and again as a matter of con-
venience, reference will be made to these four parts by the
letter designating it.    Section 3 of Article XII (so divided) is:

(a) "All mines and mining claims, both placer and rock in
place, containing or bearing gold, silver, copper, lead, coal or
other valuable mineral deposits, after purchase thereof from
the United States, shall be taxed at the price paid the United
States therefor"; (b) "unless the surface ground, or some
part thereof, of such mine or claim, is used for other than
mining purposes, and has a separate and independent value
for such other purposes, in which case said surface ground
or any part thereof, so used for other than mining purposes,
shall be taxed at its value for such other purposes, *as provided
by law";* (c) "and all machinery used in mining, and all
property and surface improvements upon or appurtenant to
mines and mining claims which have a value separate and in-
dependent of such mines or mining claims" (shall be taxed

as provided by law); and (d) "the annual net proceeds of all mines and mining claims shall be taxed *as provided by law.*"

Admittedly, the property described in the petition comes within our subdivision (a) of section 3. Clearly the value of this character of property was not to be ascertained by the regulations which section 1 of Article XII make it the duty of the legislature to prescribe, for our subdivision (a) of section 3 fixes an arbitrary value upon that property; namely, the price paid to the United States therefor, and therefore, in so far as the matter of value is concerned, it comes within the exception contained in the last clause of section 1 of Article XII, and also within the exception contained in section 16 of that Article.

It is important to keep in mind that the framers of the [3] Constitution, in considering the provisions of section 3, had in mind the assessment and taxation of mining property only, as is pointed out in the *Musselshell County Case, supra,* in the language following: "The purpose of section 3 was to provide a special method for the assessment and taxation of mining property. The making of the special provision on the subject shows conclusively that the convention was of the opinion that this species of property, though falling generally within the definition of 'property' as made in section 17, could not be justly dealt with by the method provided for other real property, and therefore must be valued and taxed by a method which would accomplish this desired result. The theory adopted was that it should be regarded as of a mixed quality— real as to the surface value, and personal as to the subsurface contents of it. This is apparent from a reading of it. * * * In order that no value should escape from taxation, the surface value was arbitrarily fixed at the price paid for it to the government."

In arriving at an intelligent interpretation of any of the [4] provisions of our Constitution, we must keep before us the fact that it is a restriction upon the power of the several

departments of the state government. (*State* v. *Camp Sing*, 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *McClintock* v. *City of Great Falls*, 53 Mont. 221, 163 Pac. 99; *Northern Pac. Ry. Co.* v. *Mjelde*, 48 Mont. 287, 137 Pac. 386; *State ex rel. Hillis* v. *Sullivan*, 48 Mont. 320, 137 Pac. 392; *Hilger* v. *Moore, supra; Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878,) Also, we must bear in mind that Article XII of our Constitution deals with the raising of revenue and the valuation and taxation of property, and that ''the division of our Constitution into Chapters and sections is a mere matter of convenience for the purpose of reference, and is not of significance in applying the rules of construction and interpretation''; and also that ''every provision dealing with the same subject matter must be considered in determining the meaning of any expression whose meaning is in doubt.'' (*Hilger* v. *Moore, supra;* Cooley's Constitutional Limitations, 7th ed., p. 91.)

An arbitrary rule having been fixed by our subdivision (a) of section 3 of Article XII of the Constitution upon the character of property described in the petition, is the tax to be computed upon that value, or is the tax to be computed upon some part of it? The language used is that this property *''shall be taxed at the price paid the United States therefor.*

The function of the courts is to interpret the law; that is, [5] not to add to or take from the law, but to give effect to the intent expressed in the law itself. ''The object of construction as applied to a written Constitution is to give effect to the intent of the people in adopting it. In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it, and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it. 'Where a law is plain, and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to

mean what they have plainly expressed, and consequently no room is left for construction.' Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." "Whether we are considering an agreement between parties, a statute, or a Constitution, with a view to its interpretation, the thing which we are to seek is the thought which it expresses. To ascertain this, the first resort, in all cases, is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning." "In interpreting clauses, we must presume that words have been employed in their natural and ordinary meaning." (Cooley's Constitutional Limitations, pp. 89, 90, 91, 92; *Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 162, 127 Pac. 146; *Johnson* v. *Butte Superior Copper Co.*, 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1057; *Smith* v. *Iron Mt. Tunnel Co.*, 46 Mont. 13, Ann. Cas. 1914B, 5, 125 Pac. 649; *Osterholm* v. *Boston & Mont. C. & S. Min. Co.*, 40 Mont. 508, 107 Pac. 499; *State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582, 144 Pac. 162.) Speaking of the same matter, Chief Justice Marshall says: The framers of the "Constitution and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said." (*Gibbons* v. *Ogden,* 22 U. S. (9 Wheat.) 1, 6 L. Ed. 68 [see, also, Rose's U. S. Notes].)

This court, in the case of *Hilger* v. *Moore, supra,* in speaking of the use of the words "taxation" and "assessment," in our Constitution, said: "When our Constitution was prepared

and ratified, the term 'assessment' and the term 'taxation' each
had a definite, well-understood meaning. Assessment was the
process by which persons subject to taxation were listed, their
property described, and its value ascertained and stated.
Taxation consisted in determining the rate of the levy and
imposing it. Speaking generally, the assessment was made
by the assessor, subject to review by the board of equalization.
The rate of taxation was fixed and imposed by the legislature
for state purposes, by the county commissioners for county
purposes, by the city council for city purposes, *etc.* This has
been the history of our revenue legislation from the time
Montana was organized as a territory, and the framers of our
Constitution understood these words and used them accord-
ingly.''

''A Constitution is not to be made to mean one thing at one
time, and another at some subsequent time, when the circum-
stances may have so changed as perhaps to make a different
rule in the case seem desirable. A principal share of the
benefit expected from written Constitutions would be lost, if
the rules they established were so flexible as to bend to cir-
cumstances or be modified by public opinion. It is with spe-
cial reference to the varying moods of public opinion, and with
a view to putting the fundamentals of government beyond
[6] their control, that these instruments are framed; and
there can be no such steady and imperceptible change in their
rules as inheres in the principles of the common law.  *  *  *
What a court is to do, therefore, is to declare the law as writ-
ten, leaving it to the people themselves to make such changes
as new circumstances may require. The meaning of the Con-
stitution is fixed when it is adopted, and it is not different at
any subsequent time when a court has occasion to pass upon
it.'' (Cooley's Constitutional Limitations, 7th ed., pp. 88,
89; 6 R. C. L. 52; 12 C. J. 700; *State ex rel. Jackson* v. *Ken-
nie,* 24 Mont. 45, 60 Pac. 589.)

The provisions of section 4 of Article XIII of the Constitu-
tion of Utah are similar to those of our section 3, Article

XII.  A uniform assessment of $50 per acre was levied against all of the coal lands purchased from the United States, as well as against all of the coal lands purchased from the state. Action in *mandamus* was begun to compel a proper assessment to be made.  The action was dismissed, because not brought within the time provided by law.  The court, however, in commenting upon the admitted facts therein, among other things, said: ''The Constitution of this state (Article XIII, sec. 4) provides that coal lands purchased from the United States shall be assessed [''taxed''] is the word used in section 4, Article XIII, of the Utah Constitution] at the price paid the government therefor.  Sections 2 and 3 of the same Article provide for the assessment of other property, which includes coal lands not purchased from the government, at its actual value.  These provisions are reiterated and affirmed in Compiled Laws of Utah of 1907, secs. 2504 and 2506.  The language both of the Constitution and the statute is plain and unequivocal, and capable of being understood by any layman in the state.''  (*Ririe* v. *Randolph,* 51 Utah, 274, 169 Pac. 941.)

It is suggested by counsel for relator that the words ''as provided by law,'' used in our subdivision (b) of section 3 of the Constitution relate back to and qualify the words ''shall be taxed at the price paid the United States therefor,'' used in our subdivision (a) of section 3.  But the ordinary rule of construction is that the exception is confined to the last antecedent.  (12 C. J. 706; *Commonwealth* v. *Kelley,* 177 Mass. 221, 58 N. E. 691; *State* v. *Centennial Brewing Co.,* 55 Mont. 500, 179 Pac. 296; *R. M. Cobban Realty Co.* v. *Chicago, M. & St. P. Ry. Co.,* 58 Mont. 188, 190 Pac. 988.)  The last antecedent, in this instance, is found in our subdivision (b) of section 3, and therefore does not modify or qualify the phrase above set forth and found in subdivision (a).

Counsel for relator insists that to tax the property in question at the price paid the United States therefor is violative of the provisions of the Constitution, providing for the uniform assessment and taxation of property.

The requirement of uniformity is a limitation upon the **[9]** powers of the legislature. Section 1 of Article XII of the Constitution, as above noted, imposes upon the legislature the duty to "prescribe such 'regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this Article." Section 16 of the same Article provides: "All property shall be assessed in the manner prescribed by law except as is otherwise provided in this Constitution." But, where the Constitution itself fixes the value at which property shall be taxed, the uniformity rule does not apply. (*Hilger* v. *Moore, supra; Northern Pac. Ry. Co.* v. *Musselshell County, supra.*)

It is urged that, if this property is taxed at the full price paid the United States therefor, some inequalities will result. With this contention we cannot agree; but, even if such be the fact, the responsibility must rest with the framers of our Constitution and with those who ratified it. (*Northern Pac. Ry. Co.* v. *Musselshell County, supra;* 12 C. J. 702, 703; Cooley's Constitutional Limitations, *supra.*) The language used, "shall be taxed at the price paid the United States therefor," is plain, clear, unambiguous. For this court to say that the property in question shall be taxed upon a valuation other than the price paid to the government therefor is to read into our Constitution a provision which is not there.

It follows that the petition does not state facts sufficient to warrant the issuance of the writ, and therefore the motion to quash is granted and the petition dismissed.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES RANKIN and STARK and HONORABLE H. H. EWING, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, concur.