WASHINGTON COUNTY et al. v. STATE TAX
COMMISSION et al. (PARRY et al., Intervenors).

No. 6426.   Decided January 28, 1943.   (133 P. 2d 564.)

Rehearing denied May 5, 1943.

*Elias Hansen,* of Salt Lake City, and *LeRoy H. Cox,* of St. George, for plaintiffs.

*Garfield O. Anderson, Grant A. Brown,* and *Hamilton Gardner,* all of Salt Lake City, for defendants.

*Durham Morris,* of Cedar City, and *Scott M. Matheson,* of Salt Lake City, for intervenors.

WOLFE, Chief Justice.

Original proceeding in this court on a petition for a writ of prohibition to prevent the Tax Commission from applying the formula set out in Section 80-2-7, R. S. U. 1933, in ascertaining the amount of money to be refunded to pumpers of irrigation water. The petition alleges that Section

80-2-7 is unconstitutional and that the Tax Commission is, therefore, without jurisdiction or authority to apply the formula set out therein. The defendants demurred generally and answered that they were proceeding according to the provisions of Sections 80-2-6, 7, and 8, R. S. U. 1933, which sections were constitutional and that the petitioners had misconceived their remedy in petitioning for a writ of prohibition. We first consider the defendants' contention that the petitioners have misconceived their remedy.

In order to ascertain whether the Commission is proceeding without authority, it is necessary to determine the constitutional question, for the Commission has the authority to apply the formula prescribed by Section 80-2-7 only if that section is constitutional. In this situation, if there is no other adequate remedy in the ordinary course of the law, the writ may be used to test the constitutionality of the statute in question. In *Levy* v. *Superior Court,* 105 Cal. 600, 38 P. 965, 29 L. R. A. 811, the court entertained the writ to test the validity of a statute which gave the court the authority to proceed in a particular manner to examine under oath a person alleged by the executor or administrator to be concealing property of the estate. We entertained the writ in a similar situation in *Mayers* v. *Bronson,* 100 Utah 279, 114 P. 2d 213, 136 A. L. R. 698, when the cause had ripened to the point where the person asked to disclose would have had to do so and thus forego a claimed immunity or resist and run the peril of being wrong with consequent fine or imprisonment. See, also, *Adolph Coors Co.* v. *Liquor Control Commission,* 99 Utah 246, 105 P. 2d 181; *McInerney* v. *City of Denver,* 17 Colo. 302, 29 P. 516; *Bell* v. *First Judicial District Court,* 28 Nev. 280, 81 P. 875, 1 L. R. A., N. S., 843, 113 Am. St. Rep. 854, 6 Ann. Cas. 986.

In this case, the authority of the Commission to proceed pursuant to Section 80-2-7 depends upon the constitutionality of that section. This type of case must be distinguished from those cases where the lower tribunal has general jur-

isdiction over the subject matter in controversy but while proceeding within its jurisdictional limits is called upon to decide the constitutionality of a statute drawn into controversy. In the latter type of cases the fact that the lower tribunal committed error in holding the statute in question constitutional does not unhorse it of jurisdiction, but it has the authority to proceed to final judgment. *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377; *State ex rel. Robinson* v. *Durand*, 36 Utah 93, 104 P. 760; *State ex rel. Heinze* v. *District Court*, 32 Mont. 394, 80 P. 673.

Even in the former type of case where the very constitution or existence of a court or its authority to proceed in a particular manner depends upon the validity of a statute, the writ will not issue unless it is also shown that the petitioner has no other adequate remedy. Section 104- ■ 69-1 and 2, R. S. U. 1933; *Mayers* v. *Bronson*, supra. Therefore, in order to determine whether the writ was properly issued in this case we must ascertain whether or not there is another adequate remedy. If there is, the alternative writ should not have been issued for the writ of prohibition is the most extraordinary of all writs. *Van Cott* v. *Turner*, 88 Utah 535, 56 P. 2d 16; *Campbell* v. *Durand*, 39 Utah 118, 115 P. 986.

The defendants suggest that the petitioners have an adequate remedy under the declaratory judgment statutes, or by injunction. Section 104-64-1 and 2, R. S. U. 1933, do expressly authorize district courts to determine the validity of statutes which affect the rights, status, ■ or other legal relations of the person bringing the action. While such proceeding might be adequate to test the validity of the statutes in question here, the Tax Commission could proceed pursuant to Section 80-2-7 while the declaratory action was pending. Thus, the petitioners might be injured even though they prevailed in the declaratory judgment proceeding. The envisaged ramifications of other suggested remedies are such that their adequacy is somewhat doubtful. Ordinarily sound public policy would re-

quire a petitioner, seeking to halt a state agency like the Tax Commission, to make an affirmative showing that he had no other adequate remedy. However, the alternative writ has issued. Any harm resulting therefrom has already been done. Since it has been delayed, the Tax Commission is quite as anxious for a decision on the questions herein involved as are the petitioners. The case involves the conflicting interests of several groups who have intervened and gone to the expense of filing briefs on the points raised. Other persons and corporations similarly situated throughout the State are interested in the outcome of the action, and the case, therefore, has a public interest phase. None of the parties will be prejudicied if we do so proceed and no good purpose can now be served by compelling the petitioners to seek other possible remedies. We, therefore, proceed to the merits.

A short statement of the historical background of this case might be helpful in an understanding of the problems raised. Before the amendment of 1930, Section 3, Article XIII of the Constitution of Utah provided that:

"Ditches, canals, reservoirs, pipes and flumes owned and used by individuals or corporations for irrigating lands owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed as long as they shall be owned and used exclusively for such purpose."

This provision was probably adopted in pursuance of a general public policy designed to encourage the cultivation and irrigation of arid lands. By 1930 the feasibility of pumping underground water to the surface for irrigation by use of electrical power had been demonstrated. At that date amendments to §§ 2 and 3 of Article XIII were adopted by the Utah electorate to remedy the obvious inequity of tax exemption accorded to gravity or surface water users as against persons who used electrical power to pump irrigation water. The Constitution was amended to provide, Art. XIII, § 2, that:

"Water rights, ditches, canals, reservoirs, power plants, pumping plants, transmission lines, pipes and flumes owned and used by individuals or corporations, for irrigating lands within the State owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed as long as they shall be owned and used exclusively for such purposes. Power plants, power transmission lines and other property used for generating and delivering electrical power, a portion of which is used for furnishing power for pumping water for irrigation purposes on lands in the State of Utah, may be exempted from taxation to the extent that such property is used for such purposes. These exemptions shall accrue to the benefit of the users of water so pumped under such regulations as the Legislature may prescribe."

Under this provision the Legislature was to work out the details. The only guide imposed by the Constitution was that the Legislature evolve a formula which would be reasonably calculated to measure the extent to which the property of the electrical distributor was used to supply pumping power.

In 1931 the Legislature enacted the present "pump refund" statutes, Section 80-2-6, 80-2-7, and 80-2-8, R. S. U. 1933, which provide:

80-2-6 "Power plants, power transmission lines and other property, used for generating and delivering electrical power, a portion of which is used for pumping water for the irrigation of lands in this state, are exempted from taxation to the extent that such property is used for such purposes. Such exemption shall accrue to the benefit of the users of the water so pumped."

"80-2-7 "The state tax commission shall ascertain the total amount of electric power in kilowatt hours distributed by each distributor thereof for all purposes within this state, and the total amount of electric power in kilowatt hours distributed and used for pumping water exclusively for the irrigation of lands within this state by each such distributor; and from the total property assessment on all properties assessed within this state so used for generating and distributing electrical power by each such distributor the state tax commission shall make an exemption of the percentage thereof which the total amount of electric power in kilowatt hours so distributed by each such distributor and used exclusively for pumping water for irrigation purposes bears to the total amount of electric power distributed by such distributor for all purposes within this state."

80-2-8 "The total amount of tax saved to each distributor by such exemption shall be prorated and paid by such distributor to the users of its power for pumping water for irrigation purposes, ratably according to the amount of power so used for such purposes by each such user."

The plaintiff contends that the Constitutional provision only authorizes the Legislature to exempt from taxation that property of an electrical distributor which is used in whole or in part to furnish electrical energy to pump irrigation water, and that, therefore, Section 80-2-7 wrongly prescribes a formula which exempts property of an electrical distributor without regards to whether or not it is so used.

The Tax Commission interprets Section 80-2-7 as permitting the application of the formula to all the property of the defendant power company which is operated as a unit. The respective positions of the parties can best be illustrated by assuming a hypothetical case. If we assume the total electrical energy generated and distributed by the Washington-Iron County system for all purposes to be 100,000 kilowatt hours, and the total energy used for pumping purposes to be 2,000 kilowatt hours, then 2,000/100,000 or 1/50 of the total electrical energy is used for pumping. Under the Tax Commission's interpretation, 1/50 of the total property in the Washington-Iron County system would be exempt from taxation. If we assume the total valuation of that system for tax purposes to be $300,000, 1/50th, or $6,000, would be exempt.

The petitioners contend that before any formula can constitutionally be applied to the property comprising the Washington-Iron County system, the property in the system, such as the line to Zion's Canyon, meters in private homes, etc., which property is not used directly to furnish power to pumpers, must be cut off from the remainder which is so used. If, for example, we assume that the property so cut off were valued at $50,000, the value of the remaining property in the system would be $250,000. Hence, in the petitioner's formula the $250,000 item would take the place of the

$300,000 item in the Tax Commission's formula. If all other factors were to remain unchanged the formula would be: 100,000 k. h. are to 2,000 k. h. as $250,000 is to X (the amount to be exempted) or $5,000. However, it is pointed out that if the formula is to be applied to only part of the property in the unit, it should take into consideration only part of the total number of kilowatt hours generated and distributed by the unit, for the property cut off would take with it part of the total kilowatt hours. It is not clear from the pleadings and the facts just what total would be left if all the property not directly used to furnish power to pumpers were cut off before the formula were applied, but in all probability a different result would be reached than that reached under the Tax Commission's interpretation.

The case raises but two questions: (1) Is the Tax Commission correctly applying the formula set out in Section 80-2-7, (2) If so, is said Section constitutional. These questions may be discussed together.

Before we hold any statute unconstitutional, every doubt as to its constitutionality should first be resolved in favor of its validity. *Stillman* v. *Lynch*, 56 Utah 540, 192 P. 272, 12 A. L. R. 552; *State* v. *Packer Corporation*, 77 Utah 500, 297 P. 1013. The Legislature enacted these statutes in 1931. Since that date the Tax Commission has proceeded under these statutes to apply the formula set out in Section 80-2-7 to all the property in the Washington-Iron County unit.

"It is a general rule that contemporaneous construction by the department of government specially delegated to carry out a provision of the Constitution raises a strong presumption that such construction, if uniform and long acquiesced in, rightly interprets the provision. * * * While such construction is not conclusive upon the courts, it is entitled to the most respectful consideration." *Wells Fargo & Co.* v. *Harrington*, 54 Mont. 235, 169 P. 463, 466.

"The construction placed on * * * constitutional provisions by officers * * * at or near the time of the enactment, which has been long acquiesced in, is a just medium for their judicial interpretation." *Foote* v. *Town of Watonga*, 37 Okl. 43, 130 P. 597, 598.

Admittedly the Legislature in prescribing a formula such as is set out in Section 80-2-7 cannot ignore the express words of the Constitution. If the formula contains elements which could not possibly be a guide or an aid or which have no relevancy to the end to be arrived at, it is pro tanto invalid. *State ex rel Public Service Comm.* v. *Southern Pac. Co.*, 95 Utah 84, 79 P. 2d 25. The petitioners contend that this formula does contain such elements; that the sole basis for any exemption is limited by the Constitution to the *use* to which the property is put; and that this basis is completely ignored by this formula which is applied to all property of an electrical distributor, operated as a unit regardless of its use.

The construction of the petitioners in this regard would appear correct if Sections 80-2-7 and 8 were read without reference to Section 80-2-6.

"But a statute is passed as a whole not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." Lewis' Sutherland "Statutory Construction" Second Ed. Vol. II, p. 706.

See, also, *State ex rel Public Service Comm.* v. *Southern Pac. Co.*, supra; *Colorado Springs Livestock Co.* v. *Godding*, 20 Colo. 71, 36 P. 884.

When so construed, Section 80-2-6, in the words of the Constitution describes the property to be exempted and the basis for the exemption is the use to which the property is put. But the use to which the property is put does not mean that there must be a separation of the whole property into different parts according to whether each one of those parts is directly engaged in creating or carrying electrical energy to pumpers. Neither the Constitution nor the statute provides that the portion used for pumping water for irrigation of lands may be (are) exempted from taxation. The words, "a portion of which is used" are descriptive of the sort of plants, power transmission lines, and other property

which is to be the subject of exemption by the legislature. "Power plants, power transmission lines no portion of which is used for pumping water for irrigation purposes" is not even the subject of the Constitutional provision or the exemption. These words are descriptive of the sort of electrical public utilities which are the subject of legislation, and it is incorrect to construe them as if they were a portion segregated for exemption. The operative words of both the Constitution and the statutes are those reading "to the extent that such property is used for such purposes." What is meant by "such property"? Not necessarily the portion directly used to create and transmit electrical energy to pumpers. "Such property" means power plants, power transmission lines and other property used for generating and delivering electrical power a *portion of which* is used for pumping purposes. In determining the extent to which "such property" is used for "such purposes", that is, irrigation purposes, it is not necessary to presume that only that property which creates and transmits the comingled energy is used for "such purposes." In another sense, all of it is used for "such purposes" because it is a unitary system. In determining the extent to which all of the system is used for irrigation pumping purposes, we must keep in mind the purpose of these statutes.

If each land owner were required to generate and distribute his own electrical energy for pumping his own irrigation water, the whole of it would be exempt under Article XIII, Section 2 if devoted only to pumping. Likewise, if one or several irrigation companies were organized to generate and distribute electrical energy solely for the purpose of pumping water, such property would be fully exempted from taxation. What the legislature intended to do was to treat for taxation purposes such portion of the property of a power company as could be said to be devoted to furnishing power to pumpers as if, in effect, it belonged to the pumpers. Naturally, since the power system was used to generate and distribute electrical power for all purposes

and none of it could be earmarked for pumpers as it came from the dynamos or went through the transmission lines and transformers, nor could the generating unit, nor even the distributing system be said to be used for a definite period to generate or distribute power exclusively for the pumpers, some formula which divided the assessed value of the property on a proportional basis in the ratio of power generated for pumping purposes to total power generated had to be devised.

The legislature, from an administrative standpoint, believed that it would be impracticable to lop off certain parts of the system over which it was claimed no mingled electrical energy flowed and those parts which it was claimed were unrelated to the production and distribution of the energy required for pumping from the system as a whole. Furthermore, a system which is tied together and treated and operated as a unit and from which a gross revenue is produced as a unit has it valuation for taxing purposes based in part on its unitary earnings. These earnings form one of the factors or bases for taxation evaluation purposes. *State ex rel Public Service Comm.* v. *Southern Pac. Co.,* supra.

All consumers are not only looked upon as contributing to the total operating income, but the system is considered as a unit in producting the earnings. The less paying portions were bolstered by the greater yielding parts. In that sense every part of the system contributes to every dollar of earnings. In fact, were not this system operated as a unit, it may be that part of the lines which do furnish power to pumpers would not be maintained at all because when cut off from the unit they would not be profitable.

Reasoning from the earnings as a whole produced by the system as a whole, there was nothing wrong in theory in including in the valuation, which is ascertained by a unitary assessment and which is to form the base for the application of the proportional power multiplier, all parts of unitary system. And from an administrative standpoint,

which in taxation matters does not require exactitude, it was certainly permissible.

While it is true, as petitioners contend, that the formula can not contain elements which have no possible relevancy to the end sought to be arrived at, it must also not be so restricted as to exclude the consideration of those elements which are generally recognized as relevant or required. The property, no matter which formula is applied, will still be operated as a unit. It will still have its gross earnings based on a unitary system, and it will be assessed for taxation as a unit. Furthermore, the refunds to the pumpers will be made according to the number of kilowatt hours of electricity each pumper used, and the total kilowatt hours produced and distributed by the unit will continue to be so mingled that it will be impossible to determine which unit of electrical energy went to the pumpers and which went for other purposes. The Constitution does not explicitly so require, and when we consider all of the above factors, it would appear unreasonable to construe the Constitutional provision and these statutes as requiring in this one instance that the Tax Commission break this unit down into its component parts before any formula could be applied. However, the holding of this case is based upon the fact that the properties involved are operated as and considered to be a single integrated unit. There may be situations in this State in which an integrated power system is made up from numerous smaller self-contained units, some of which latter units furnish power to pumpers. The problem, being largely an administrative one, must admit of some flexibility, and in such case if it is administratively desirable to take the assessment of such sub-integrated unit as the base for the formula herein laid down, we are not at this time prepared to say that it may not or should not be done. However, the question is not before us and the opinion should not be construed as deciding it.

The Tax Commission has interpreted this provision to permit the treatment of this property as a unit and has

applied this interpretation for over 10 years. When so interpreted the statutes must be held to be constitutional, and we cannot hold that this formula as applied by the Tax Commission is not reasonably calculated to accomplish the objective of the Constitutional provision. The Tax Commission is proceeding properly and the alternative writ should be vacated. Such is the order.

McDONOUGH, J., and M. J. BRONSON, District Judge, concur.

LARSON, J., dissents.

MOFFAT, Justice (dissenting).

In this original proceeding it is in substance alleged by Washington County and others in their petition for a writ of prohibition that the Southern Utah Power Company owns electrical generating plants, transmission lines, and other electrical properties and facilities within Washington County and Iron County; that part of the energy generated and transmitted is used for pumping water for irrigating lands within the State of Utah, and part has been and is now used for other purposes.

In the petition, it is claimed that the Tax Commission is without jurisdiction to exempt from taxation any part of the power company property not used for pumping water for the irrigation of lands in Utah. It is further claimed that the Tax Commission has assessed all the property without regard to whether such property is used for the pumping of water for irrigation purposes, and that the Tax Commission will, unless prohibited make deductions from the total assessed value to the extent that the power used for pumping water bears to the total power used for all purposes.

Certain communities, pumpers, and the Tax Commission have joined as parties. There appears to be agreement as to the facts. Reference is made to the facts in the discussion.

The answer of the Power Company presents the theory adopted by the prevailing opinion, which is that all of the company system, whether or not it distributes electrical energy to different counties, municipalities or other taxing units, is operated as a unit. The Company is ready and willing and prepared to pay its taxes, so the amount of the tax is not questioned. The basis and system of apportioning property value and exemptions is questioned.

Three questions are presented for determination. In the language of plaintiffs, they are:

"(1) Do the provisions of Section 2, Article 13, of the Constitution of Utah permit a deduction of exemption from taxation for the support of any taxing unit any property owned by a power company unless such property is a necessary part of and is used for generating and delivering electrical power for pumping water for the irrigation of lands within the State of Utah?

"(2) When a power company operates its plants, distributing systems, meters and other electrical facilities as a unit may the State Tax Commission either with or without legislative sanction permit the deduction or exemption from taxation by a taxing unit property within the taxing unit where the property within such taxing unit is not necessarily used for either generating or delivering electrical power which is used for pumping water for irrigation without offending against the provisions of Article 13, Section 2, of the Constitution of Utah?

"(3) May the provisions of R. S. U. 1933, 80-2-7 and 80-2-8, be construed as being in harmony with Section 2, Article 13, of the Constitution of Utah or are such legislative enactments in conflict with such constitutional provisions so as to render the legislative enactments unconstitutional?"

In this dissent, the questions will be treated together. The meaning and purpose of a part of Article 13, Sec. 2, of the Constitution of Utah are involved. That part of the Article and Section reads as follows:

"Water rights, ditches, canals, reservoirs, power plants, pumping plants, transmission lines, pipes and flumes owned and used by individuals or corporations for irrigating lands within the State owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed as long as they shall be owned and used

exclusively for such purposes. Power plants, power transmission lines and other property used for generating and delivering electrical power, a portion of which [property? power?] is used for furnishing *power* for pumping water for irrigation purposes on lands in the State of Utah, may be exempted from taxation to the extent that such *property* is used for such purposes." (Italics added and bracketed questions mine.)

The foregoing language with other language not pertinent to this case became a part of the Constitution by amendment approved November 4, 1930. During the whole period of State and Territorial history, the State has been divided into governmental and taxing units. Counties have taxing powers and their burdens are carried on by the means raised from county taxation. There are cities and towns and school districts, and other units having power to collect taxes upon the property within the boundaries of each of such districts, cities, counties, etc.

Section 5 of Article 13 provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."

Recurring to the part quoted above from Sec. 2, Art. 13, of the Constitution, relating to the italicized words, *property* and *power,* it may make a difference as to whether the word *which* has for its antecedent the word *property* or the word *power.* The antecedent of *which* must be *property,* as it makes a ridiculous rendition to say, "a *portion* of *which* [power] is used for furnishing *power.*" The construction requires the language to be read, "a *portion* of *which* [property] is used for furnishing power." It thus seems to be clear that it is the portion of the *property* that may be exempted.

Sec. 80-2-6, R. S. U. 1933, puts into effect that part of Sec. 2 of Article 13 which says power plants, etc., "may be exempted," as follows:

"Power plants, power transmission lines and other property, used for generating and delivering electrical power, a portion of which [property] is used [to furnish power] for pumping water for the irrigation of lands in this state, are exempted from taxation to *the extent that such property is used for such purposes.*" (Italics and brackets added.)

Then follows a troublesome sentence:

"Such exemption shall accrue to the benefit of the users of water so pumped."

More as to this thought later.

The language of both the Constitution and the statute exempts power plants to the extent of the portion of the *property* used, and not upon the portion of the *power* used. There is thereby provided an exemption, more accurately speaking a transfer of a portion of the taxes paid upon the property of the power plant owner to certain other tax-payers who have had to pay for the use of property used in generating and delivering power to them. It may make no difference to the power company as to the amount of taxes, and yet it may. Washington County may require a different rate of assessment of all property subject to as-sessment for county purposes than its adjoining counties. Thus, the net result is that by unit assessment or valuation of power company property for taxation for county or municipal purposes, taxes due to the county may be paid to individuals in another county, and the individuals to whom it is paid have paid more to their own county or munici-pality because of enhanced land values than either the amount received, or, more or less, than his neighbor farmer who obtains water by other means or from other sources upon comparable lands. The income from taxes of the various taxing units is thus made to vary depending upon the quantity or amount of power used by pumpers and their location by assessing and collecting the taxes upon a power plant by the unit system.

"All tangible property in the State, not exempt * * * shall be taxed in proportion to its value."

Sec. 80-2-6, R. S. U. 1933, may not be questioned. It is cast in the same language as a part of Sec. 2 of Article 13 of the Constitution. The legislature is authorized to provide for the exemption of a proportion of the property of power companies when part of the *property* is used for generating and delivering power for pumping water for irrigation. The difficulty arises out of Secs. 80-2-7 and 80-2-8, R. S. U. 1933, and raises the questions here involved. For exemption purposes the power load used for pumping can bear no reasonable relation to or measure of the property located and used in several taxing districts when the *property* in part of the several districts is not used for pumping purposes in those districts.

"The State Tax Commission shall administer and supervise the tax laws of the State. It shall assess mines and public utilities and adjust and equalize the valuation and assessment of *property* among the several counties." Sec. 11, Art. 13 of the Constitution.

Sec. 10, Art. 13, provides:

"All corporations or persons in this State, or doing business herein, shall be subject to taxation for State, County, School, Municipal or other purposes, on the real and personal property owned or used by them within the Territorial limits of the authority levying the tax."

And Sec. 5, Art. 13, provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect for all purposes of such corporation."

The fundamentals of the structure of our State government are the perpetuation, maintenance and support of strong local, self-governing units. Destroy or take away the taxing power of local governmental units and their existence becomes merely a name without power or sub-

stance. The Constitution safeguarded these local powers and rights further by the provisions of Sec. 29, Art. 6, as follows:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or *interfere* with any municipal improvement, *money*, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions." (Italics added.)

These sections, including Sec. 2 of Article 13, must be construed together and full effect be given thereto.

Sec. 11 of Art. 13 directs the State Tax Commission to assess public utilities and adjust and equalize the *valuation* and assessment of *property* among the several counties. There is no power to exempt the property of an electric power company unless the property, not the power, is used for generating or distributing power for pumping water for the irrigation of lands within the State of Utah. There should be no difficulty in finding what *property* is to be assessed in Washington County or in Iron County and preserve an equalization of assessment of property in each county and the other municipal taxing units therein. This precludes the use of the power formula for either assessment or collection of taxes in the respective governmental units.

There may be and no doubt is some relation between property used in generating and distributing electrical power as a unit and the total power produced, yet even that is variable; but what relation there is between the *property* used for all purposes and the amount used for pumping purposes is difficult to comprehend; hence, county and municipal revenue, when the formula developed by Sec. 80-2-7 is applied, would seem to defeat other constiutional provisions as to the assessment and equalization of property values in counties and their contained municipalities for taxation purposes.

I now turn attention to that troublesome sentence hereinbefore referred to, viz:

"These exemptions shall accrue to the benefit of the users of water so pumped under such regulations as the legislature may prescribe."

This is a well-intentioned provision. What it really amounts to is that the power company will pay back to the pumper the amount he has paid and then deduct that amount from what is called an exemption. It would seem self-evident that if the Tax Commission exempts a part of the property in Washington County that may not be exempted from taxation because not used for pumping water for agricultural purposes, the county will be deprived of the taxes it is entitled to collect upon property located within its boundaries. To use the power produced and the power used for pumping for irrigation is to use a variable having no certain relation to the property values in different counties. The proportion is ascertainable only after the power has been produced and prevents the counties and municipalities from determining the values upon which their taxes may be levied for governmental or other purposes.

In the recent case of *Sinclair Refining Co.* v. *State Tax Commission,* 102 Utah 340, 130 P. 2d 663, 665, while no exemption clause was involved, the matter of a fair apportionment of the taxes raised by the Tax Commission's valuations on tank cars moving in different counties was considered. It was there said:

"These provisions manifest an intent to give to each county through which a railroad is operated a tax upon the per cent of its rolling stock used within it. * * *

"That such cars are for tax purposes no different from railroad rolling stock is evident. That its value, inseparably connected with its use and business is derived from all counties in which it is used, or may be used, is equally evident. No county can legally be entitled to the benefits of any portion of an assessment on the property used in another county."

This case suggests a final point for comparison: The freight or passenger rates or the revenue produced therefrom, as a whole, would not be considered a reasonable basis upon which to apportion to the taxing units the taxable property of a railroad, a bus line, or a transmission line where each or all passed through two or more counties. Neither is the power produced and the proportion thereof used for pumping purposes a reasonable basis to apportion assessments or exemptions of power plants. I think such apportionment as contemplated by the unit assessment is contrary to the fundamental principles of property taxation under the Constitution of Utah.

For the reasons stated, I think the writ of prohibition should be made permanent.