298 P.2d 823

**James M. ALEXANDER et al., Plaintiffs,**

**v.**

**Hal S. BENNETT, Donald Hacking, and Stewart M. Hanson, Commissioners of the Department of Business Regulation of the State of Utah, et al., Defendants.**

No. 8471.

Supreme Court of Utah.

June 18, 1956.

164

Pugsley, Hayes & Rampton, Grant Mac-
farlane, Salt Lake City, for appellants.

E. R. Callister, Jr., Atty. Gen., Peter M.
Lowe, Asst. Atty. Gen., for respondents.

VAN COTT, District Judge.

The petitioners in this matter have filed
with this Court their petition seeking to pro-
hibit the defendants from revoking, cancel-
ling, or calling in their licenses heretofore
issued to them as naturopathic physicians.
There are, however, two of the plaintiffs
who have passed the requisite examinations
as naturopathic physicians and are seeking
to have issued to them licenses similar in
scope to those held by the other petitioners.
The stipulation of facts as set forth by the
parties hereto show that the main group of
plaintiffs or petitioners have held licenses
for a great number of years which allow
them to practice their profession as naturo-
pathic physicians together with the privi-

lege, and what they claim is their right, to use in their professional capacity the use of drugs and to perform minor surgery and the practice of obstetrics.

Over the years from 1939 there have been opinions from the Attorney General's Office which have interpreted the statutes involved in this matter in a manner that is favorable to the position of the petitioners and pursuant to these opinions the Department of Registration has issued the licenses heretofore mentioned. Prior, however, to said time the Department took a contrary view of the statutes and issued the licenses in accordance therewith. It is because of this practice since 1939 that the petitioners assert that the doctrine of contemporaneous interpretation should apply to the construction given to the statutes in question and that their rights in the licenses as they now exist should be recognized by this Court as being a property right not subject to change or interruption.

While the doctrine as advocated by counsel for petitioners is recognized as a fundamental principle of law and has the force of raising a strong presumption, that such construction, if uniform and long acquiesced in, rightly interprets the statute we find that such interpretation has not always been uniform as above mentioned and therefore has not been long acquiesced in,[1] nor are the statutes in question ambiguous and of doubtful meaning.[2]

For an answer to the problem presented it is necessary to construe the statutory law applicable to the matter at hand.

Covering the matter of who is entitled to practice medicine in its broadest sense is the following statute, Title 58, Chapter 12, Section 3, Utah Code Annotated, 1953.

"License—Several classes.—The following classes of licenses shall be issued:

"(1) To practice medicine and surgery in all branches thereof.

"(2) (a) To practice as an osteopathic physician without operative surgery in accordance with the tenets of a professional school of osteopathy recognized by the department of registration.

"(b) To practice as an osteopathic physician and surgeon in accordance with the tenets of a professional school of osteopathy recognized by the department of registration.

"(3) To practice the treatment of human ailments without the use of drugs or medicine and without operative surgery in accordance with the tenets of the professional school, college or institution of which the applicant is a graduate as designated in his application for license; if the applicant for a license under subsection (2) or under this subsection successfully passes *the* examination in obstetrics the license shall also set forth this right to practice obstetrics.

"(4) To practice obstetrics."

It will be observed that section 3 thereof deals with the general and overall right of

1. Washington County v. State Tax Commission, 103 Utah 73, 133 P.2d 564.

2. Murdock v. Maybey, 59 Utah 346, 203 P. 651.

the petitioners to follow their profession. It will be noted that the right to treat human ailments is confined to such methods as are known and practiced by these practitioners without the use of drugs or medicine and without the use of operative surgery (be it minor or major).[3] It is then provided that in addition to the right to practice as aforesaid and if the practitioner successfully passes *the* examination in obstetrics the license shall then include this subject.

From a reading of the statute it is apparent that the use of drugs and medicine and operative surgery is explicitly forbidden to these petitioners except as they may qualify for the use thereof by some method otherwise provided.

█ It is the contention of the petitioners that the tenets of their profession have opened up the field of naturopathy to the extent that they are qualified to use drugs and perform minor surgery and to practice obstetrics. To say this is to leave in the hands of this profession the right to repeal the statute which governs their practice and thereby customize and shape the statute to fit them, rather than to require them to fit section 1 of the statute covering the "practice of medicine and surgery in all branches thereof." It is a doctrine advanced by a profession of bending the law to their determination of what shall be the tenets and requirements of a profession in place of the individual conforming to the prerequisites of the legislature. It is fallacious in its

principle and we are unable and unwilling to lend our approval thereto.

The defendants do not deny that the petitioners have as a part of their license as naturopathic physicians the privilege of practicing obstetrics, provided they meet the prerequisite condition of passing the examination necessary to the carrying on of this part of treating human ailments. The contention between the parties arises when it comes to who shall give the examination and the scope of its coverage.

The petitioners assert that the examination should be given by their committee of naturopaths and as a part of the examination on that subject. It is the belief of the defendants that the subject of obstetrics should be examined upon as though it were being given to an applicant on the subject of obstetrics only. We believe that the legislature has answered this problem by the statutes pertinent to the matter.

Title 58, Chapter 1, Section 5 of the Utah Code Annotated, 1953, covers the mode of examination for professions by a committee of their own respective professions and is so far as applicable as follows:

"Exercise of department functions—By director—Assistance of representative committees for professions, trades, or occupations—Number and qualifications of members.

"The functions of the department of registration shall be exercised by the director of registration under the supervision of the

---

3. State v. Thierfelder, 114 Mont. 104, 132 P.2d 1035.

commission of the department of business regulation and, when so provided, in collaboration with and with the assistance of representative committees of the several professions, trades and occupations as follows: * * *

"(9) For practitioners of medicine and surgery in all branches thereof, and for the practice of obstetrics only, a committee of five persons each of whom shall be a licensed practitioner of medicine and surgery in all branches thereof in this state and a graduate of a chartered medical college of recognized standing. * * *

"(11) For practitioners of naturopathy, a committee of three members, each of whom shall be a graduate of a school of naturopathy of standing recognized by the department of registration."

The above two subsections of the statute deal directly with the method of examining naturopaths and those desiring to practice obstetrics only. It is the word "only" as used in the statute that petitioners claim places them in a different category than say a midwife, who is going to qualify for obstetrics, and gives them the alleged right to be examined by their own professional committee on that subject.

In this connection it will be noted that Title 58, Chapter 12, Section 3 says that those applicants for a license of naturopathy who successfully pass *the* examination in obstetrics shall have as a part of their license the right to practice in that field. Can there be any doubt what examination the legislature intended when it said *the*

examination and then went on in Section 3 of said statute to provide how, and by whom the examination shall be given? Are we to say that an applicant qualified in no other medical field shall be examined by the practitioners in medicine and surgery in all branches thereof and these petitioners shall be subjected to a lesser or different form of examination? Petitioners certainly do not expect to take a more severe examination by their own committee, skilled only in a segment of medical learning than they would be given along with midwives and others taking only the subject of obstetrics. What harm can come to these petitioners if they are required to meet only the professional skill in this subject that would be required of a midwife? We see none.

We believe that the word "only" as used by the legislature referred to those persons taking obstetrics only as distinguished from those taking it as part of the requirements of the "practice of medicine and surgery in all branches thereof" as contained in subsection 1 of Title 58, Chapter 12, Section 3, and that it was not an attempt by the legislature to separate obstetrics into various degrees, depending upon what profession is wont to give it as a part of their tenet of their profession.

By saying that all applicants for a license to take obstetrics shall take the same examination from the same class of committee lends to uniformity of requirements and thereby fairness to all.

If this committee requires of midwives certain requisite skill, learning, and aptitude

for the protection of the public in the practice of obstetrics is it not reasonable to believe the legislature intended that these petitioners should reach in professional attainment at least this standard. We believe the legislature so intended.

By what we have heretofore said it is our opinion that these examinations shall be given by a reasonable standard aimed at requiring at least a minimum of learning, skill, and proficiency such as will protect the public welfare. That is in the last analysis the object of such licensing laws.

We are obliged to assume that any examination given would be devised and given in a bona fide attempt to determine the qualifications of the applicant, and not with any ulterior design of actually preventing qualified persons from obtaining a certificate to practice. Should the department, or its examining committee, fail to so properly discharge its duties, or act in any manner that is capricious or arbitrary, the applicant would not be at the mercy of said department of such committee, but recourse to the courts would be available.[4]

In regard to the use of drugs and the performance of operative surgery that is a subject which must be covered by the requirements relative to the practice of obstetrics, and if in the opinion of the examiners that is a part of the necessary, proper, and efficient practice of obstetrics, we see no reason why, to the extent that it comes within such practice, successful applicants cannot embrace their use. Certainly under subsection 4 of Title 58, Chapter 12, Section 3, Utah Code Annotated, 1953, there is not a prohibition against such inclusion.

For the reasons above mentioned the petition for a permanent writ of prohibition is denied. Each party to bear his own costs.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, J., does not participate.

WORTHEN, J., having disqualified himself does not participate herein.

4. See Clayton v. Bennett, 5 Utah 2d 152, 298 P.2d 531.