KENNECOTT CORPORATION, a New
York corporation, Plaintiff,

v.

SALT LAKE COUNTY, et al.,
Defendants and Appellants.

SALT LAKE COUNTY, et al.,
Cross-claimants and
Appellants,

v.

The STATE TAX COMMISSION OF
UTAH, et al., Cross-defendants.

No. 18972.

Supreme Court of Utah.

June 27, 1985.

452

Theodore L. Cannon, Co. Atty., Bill Thomas Peters, John G. Avery, Sp. Deputy, Salt Lake City, for defendants and appellants.

Keith E. Taylor, John F. Waldo, Salt Lake City, for Kennecott.

Rex E. Madsen, Reed L. Martineau, Salt Lake City, for State Tax Com'n.

STEWART, Justice:

This appeal arises from a challenge by Salt Lake County to the Utah State Tax Commission's methods of valuing mining properties owned by Kennecott Corporation. On May 19, 1982, Kennecott sued the Tax Commission, the County, and others for a partial refund of its 1981 property taxes previously paid under protest. Jurisdiction was alleged pursuant to U.C.A., 1953, section 59-11-11. Kennecott complained that U.C.A., 1953, section 59-5-4.5 (repealed 1982 Utah Laws ch. 66, section 6), which reduced the valuation of residential property by 20%, was unconstitutional and that consequently Kennecott's tax burden was unlawfully increased. In *Rio Algom Corp. v. San Juan County,* Utah, 681 P.2d 184 (1984), we upheld the constitutionality of section 59-5-4.5, and by stipulation of the parties that issue is no longer part of this suit.

The County filed two cross-claims against the Tax Commission and one counterclaim against Kennecott. The first cross-claim against the Tax Commission alleged that U.C.A., 1953, section 59-5-57, which governs the assessment of mines, mining claims, and mining machinery, prescribes a method of assessment that does not reflect the full cash value of mining property, which therefore violates Article XIII, Section 3 of the Utah Constitution. The cross-claim further alleged that the Tax Commission had failed to assess certain personal property of Kennecott at its full cash value and had erroneously assessed the value of improvements to real property by classifying them as personal

property. The cross-claim prayed for (1) a declaration that section 59-5-57 was unconstitutional; and (2) an order directing the Tax Commission to correct the inequities in its assessment procedures and assess state-assessed mining properties at their full cash value, as required by Article XIII, Section 3.

The second cross-claim against the Tax Commission alleged that the Tax Commission possessed information about Kennecott's assessments that Salt Lake County was entitled to review and prayed for an order directing the Tax Commission to make the information available to the County.

The County's counterclaim against Kennecott alleged that Kennecott's mining properties and equipment were undervalued for various reasons[1] and that therefore the County was entitled to recover lost taxes from Kennecott for previous years. It prayed for an order fixing the full cash value of Kennecott's properties as of 1981 and for a judgment for taxes that have escaped assessment over the past five years.

The district court ruled that the County lacked standing to maintain its cross-claims against the Tax Commission and its counterclaim against Kennecott and therefore dismissed the cross-claims and counterclaim with prejudice. The County appeals the dismissal. We reverse and remand.

I.

■ The major issue in this case is whether the County has standing to sue the Tax Commission and Kennecott. At the outset, we note that standing issues often turn on the facts of a case and that "[g]eneralizations about standing to sue are largely worthless as such." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 151, 90

---

**1.** These reasons included (a) Kennecott's mining claims were valued at a flat rate per acre, irrespective of their fair cash value; (b) the assessment of Kennecott's minerals at two and one-half times the net annual proceeds with loss carry forward was an unconstitutional method of assessment that allowed much of Kennecott's minerals to escape assessment; and (c) the value of Kennecott's personal property and improvements to real property was underassessed because of inappropriate depreciation schedules and because historical cost less depreciation as a methodology of appraising personal property is in "complete disregard" of currently recognized valuation practices in locally assessed personal property.

S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Nevertheless, in *Jenkins v. Swan,* Utah, 675 P.2d 1145 (1983), we formulated an alternative test for determining standing.

1. We first apply traditional standing criteria, which require that (a) the interests of the parties be adverse, and (b) the parties seeking relief have a legally protectible interest in the controversy. *Id.* at 1148, 1150. "Plaintiff must be able to show that he has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute." *Id.* at 1148.

2. If the plaintiff has no standing under the first step, then he may have standing if no one has a greater interest than he and if the issue is unlikely to be raised at all if the plaintiff is denied standing. *Id.* at 1150.

3. In unique cases, standing may be established by a showing that the issues raised by the plaintiff are of great public importance and ought to be judicially resolved. *Id.* at 1150–51.

In this case, the County satisfies the first step of the standing test. Under the current statutory scheme, which was in effect when Kennecott filed its complaint, the Tax Commission assesses metalliferous mines and mining claims, section 59–5–57 (Supp. 1983), and apportions these assessments to the counties and the other taxing districts in which the mines and mining claims are situated, section 59–6–1(5) (Supp.1983). By May 25th of each year, the Tax Commission transmits to each county auditor a statement showing the assessed value of the state-assessed properties within the county and the amount apportioned to the county. Section 59–6–2 (Supp.1983). By June 1st, each county must in turn apportion the value of the state-assessed properties among the various taxing districts within the county and transmit statements of those apportionments to the taxing districts. Section 59–6–3 (Supp.1983). By June 15th, each county must set the mill levy on the taxable property of the county. Section 59–9–6.3 (Supp.1983). The mill levies are limited to 16 mills per assessed dollar valuation in counties with a total assessed valuation of over $20 million and 18 mills per assessed dollar valuation for counties with a total assessed valuation under $20 million. Section 59–9–6.2 (1974). Counties may not incur debt in excess of the taxes for the current year except by a majority vote of qualified electors, Utah Const. Article XIV, Section 3, and in such case the debt is limited to 2% of the taxable property within the county, Utah Const. Article XIV, Section 4.

If, as alleged, Kennecott's state-assessed mining properties are underassessed, then the County "suffer[s] some distinct and palpable injury that gives [it] a personal stake" in the assessed value of state-assessed properties. The assessment determines in part the tax base of both the County and the taxing districts within the County, to whom the county treasurer owes a fiduciary duty. *See Board of Education of Granite School District v. Salt Lake County,* Utah, 659 P.2d 1030 (1983). If the value of state-assessed properties is underassessed, the mill levy and debt limitations on the County could well prevent the County from raising adequate revenues to perform its statutorily established responsibilities.

This Court has heard and disposed of numerous cases where counties have challenged Tax Commission assessments, apportionments, and other actions by the Tax Commission. *See Washington County v. State Tax Commission,* 103 Utah 73, 133 P.2d 564 (1943); *Kane County Board of Equalization v. State Tax Commission,* 88 Utah 219, 50 P.2d 418 (1935); *Rich County v. Bailey,* 47 Utah 378, 154 P. 773 (1916); *Juab County v. Bailey,* 44 Utah 377, 140 P. 764 (1914); *Salt Lake County v. State Board of Equalization,* 18 Utah 172, 55 P. 378 (1898). Although the standing issue was not explicitly raised in these cases, they implicitly recognize that counties have standing to challenge determinations by the Tax Commission that directly affect the counties' budgeting and taxing functions.

Furthermore, the second step of the standing test would also give the county

standing in this case. If counties do not have standing to challenge underassessments of state-assessed properties, then underassessments could be effectively insulated from challenges, which would not likely be made by either a state-assessed property owner, by the Tax Commission (which made the underassessment), or by any county-assessed taxpayer.[2]

## II.

■ The Tax Commission and Kennecott argue that the County lacks standing because no statute explicitly authorizes the County to challenge assessments by the Tax Commission. They advance a rule followed by other courts that the right of judicial review in tax assessment cases is by statute limited to a specified class, and it cannot be extended to entities, such as counties, not fairly within the statutory provisions. *E.g., State ex rel. St. Francois County School District R–III v. Lalumondier,* Mo., 518 S.W.2d 638 (1975); *In re Proposed Assessment of County Treasurer,* 219 Iowa 1099, 260 N.W. 538 (1935); *Grigsby v. Minnehaha County,* 6 S.D. 492, 62 N.W. 105, 107 (1895). *See also* Annot., "Who May Complain of Underassessment or Nonassessment of Property for Taxation," 5 A.L.R.2d 576 (1949). The rule advanced by the Tax Commission is consistent with this Court's decisions. *See Pacific Intermountain Express Co. v. State Tax Commission,* 7 Utah 2d 15, 316 P.2d 549 (1957); *Home Fire Insurance Co. v. Lynch.* 19 Utah 189, 56 P. 681 (1899).

■ Nevertheless, the rule relied upon by the Tax Commission and Kennecott does not control this case, because it does not apply to cases where a county challenges not just the validity of a particular assessment, but the constitutionality of the mining assessment statutes and assessment methods generally. Clearly, the decision of

assessing authorities is subject to judicial review when they value property pursuant to a statute or method claimed to be unconstitutional, or have otherwise acted outside their statutory authority. "When the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally not merely on a single individual but on a large class of individuals or corporations, a party aggrieved may resort to a court of equity...." *Stanley v. Supervisors of Albany,* 121 U.S. 535, 551, 7 S.Ct. 1234, 1239, 30 L.Ed. 1000 (1887); *see also* 3 T. Cooley, *The Law of Taxation* § 1201 (1924); 84 C.J.S. *Taxation* § 561 at 1104–06 (1954); *cf. Home Fire Insurance Co. v. Lynch,* 19 Utah 189, 56 P. 681 (1899); *Clay County v. Brown Lumber Co.,* 90 Ark. 413, 119 S.W. 251, 253–54 (1909); *White v. Board of Appeals of Cook County,* 45 Ill.2d 378, 259 N.E.2d 51, 52–53 (1970); *Meredith v. Elliott,* 247 S.C. 335, 338, 147 S.E.2d 244, 249 (1966). Questions of the legality or constitutionality of tax statutes are proper subjects for judicial review. *See Utah Tax Commission v. Wright,* Utah, 596 P.2d 634 (1979); *Shea v. State Tax Commission,* 101 Utah 209, 120 P.2d 274 (1941).

In *Kane County Board of Equalization v. State Tax Commission,* 88 Utah 219, 50 P.2d 418 (1935), Kane County petitioned for a writ of certiorari to review Tax Commission decisions which set aside an assessment of an electric company's equipment by Kane County. The electric company argued that the decision of the Tax Commission was not reviewable because a statute provided that Tax Commission decisions were final. We rejected that argument and issued the writ of certiorari, under the predecessor to our current Rule 65B(b)(2), which provided for a writ of cer-

---

**2.** This case does not present the issue of whether individual taxpayers may challenge the assessments of other individual taxpayers. *See generally* Annot., "Standing of One Taxpayer to Complain of Underassessment or Nonassessment of Property of Another for State and Local Taxation," 9 A.L.R.4th 428 (1981). However,

even if individual taxpayers could, in certain cases, show a sufficient personal stake in another's state-assessed tax assessment, challenges by counties are a more orderly method in general for challenging underassessments of state-assessed properties than individual taxpayer challenges.

tiorari where an inferior tribunal exceeded its jurisdiction.

In this case, the County's first cross-claim against the Tax Commission alleges that U.C.A., 1953, section 59–5–57, which assesses metalliferous mines and mining claims at a flat rate of $10 per acre plus two times the net annual proceeds for the three preceding calendar years, is unconstitutional because it does not assess mining properties at their full cash value, in violation of Article XIII, Section 3 of the Utah Constitution. The cross-claim further alleges that the Tax Commission's methods for valuing Kennecott's personal property also do not reflect its full cash value. Therefore, the County is entitled to seek judicial review of these issues. Similarly, the County's counterclaim alleges that several of the Tax Commission's methods of valuation, see note 1, supra, result in a value substantially less than full cash value, and therefore the County is also entitled to judicial review of its counterclaim.

■ Furthermore, the cases cited by the Tax Commission and Kennecott to support their argument are distinguishable from this case on the basis of procedural posture. In this case, Kennecott itself complained that the 20% reduction of county-assessed property values had unlawfully increased Kennecott's tax burden, and the County responded by a counterclaim and cross-claim challenging the valuation of Kennecott's properties. On general equitable principles, Kennecott is in no position to ask a court to adjudicate the allegation that its taxes are too high and then claim that the court cannot adjudicate the

allegation that the valuation of Kennecott's property is too low because of an allegedly unconstitutional statute. By alleging underassessment of locally assessed properties, Kennecott put the valuation of its own state-assessed properties at issue. *Rio Algom Corp. v. San Juan County*, Utah, 681 P.2d 184 (1984).[3] Accordingly, Salt Lake County was entitled to raise the issue of the valuation of Kennecott's property.

In contrast to this case, the cases cited by the Tax Commission and Kennecott are distinguishable because they involve direct challenges to or appeals from assessments, not counterclaims or cross-claims against a state-assessed taxpayer of a systematic underassessment based on a constitutionally challenged statute, especially when that taxpayer has directly challenged the valuation of county-assessed properties in an effort to reduce its own tax liability.

■ The Tax Commission argues that the County cannot sue the State Tax Commission or challenge the constitutionality of a state statute unless that power is specifically enumerated in the County's grant of powers. However, we have held that section 17–4–3(1) grants the counties power to "sue and be sued," where they may, under other applicable statutes or principles, properly sue or be sued. *Shaw v. Salt Lake County*, 119 Utah 50, 53, 224 P.2d 1037, 1038 (1950). Part I, supra, demonstrates that applicable legal principles properly allow the County the right to sue under the facts of this case.[4]

The Tax Commission also argues that the County's cross-claim was not timely filed. Its sole legal support, *Juab County v.*

---

**3.** In *Rio Algom*, the parties were situated similarly to this case: Rio Algom sued San Juan County, complaining that county-assessed properties were undervalued because of two allegedly unconstitutional statutory provisions, section 59–5–4.5 and section 59–5–109. After upholding section 59–5–4.5 and invalidating section 59–5–109, we remanded the case with directions that to prove its right to recover, Rio Algom had to establish (1) that the county-assessed properties were underappraised, *and* (2) "the true value of [Rio Algom's] own properties." 681 P.2d at 197.

**4.** After the complaint was filed in this case, the Legislature enacted a procedure for counties to

pursue in seeking judicial review of Tax Commission assessments. *See* U.C.A., 1953, section 59–7–12 (as amended, 1983 Utah Laws ch. 278, section 1) and section 59–24–2 (as amended, 1983 Utah Laws ch. 278, section 2). This case does not raise the issue whether a county which now seeks judicial review of a statute governing assessment of state-assessed properties or of an actual assessment by the State Tax Commission must first pursue in all cases the procedural remedies provided by these statutes. *See Rio Algom Corp. v. San Juan County*, Utah, 681 P.2d 184 (1984).

*Bailey,* 44 Utah 377, 140 P. 764 (1914), is distinguishable because, again, it involves an initial challenge to a state assessment, not a counterclaim or cross-claim.

### III.

Kennecott argues that even if the County has standing to bring its counterclaim, the tax division of the district court has no authority to grant the County's prayer that the court value Kennecott's properties as of 1981. Kennecott argues that since the Tax Commission's power to assess mines originates in the Utah Constitution Article XIII, Section 11, the Legislature cannot diminish that power by allowing the courts to adjust mining assessments.

■ We agree. Article XIII, Section 11, provides for creation of the Tax Commission and provides that the Tax Commission shall "assess mines and public utilities." In *State ex rel. Public Service Commission v. Southern Pacific Co.,* 95 Utah 84, 79 P.2d 25 (1938), we held that Article XIII, Section 11, limits the Legislature's power to confer the power of assessment on any other governmental entity. In that case, we struck down a statutory scheme which effectively removed from the Tax Commission the function of assessing utilities and assigned that function to the Public Service Commission. We stated:

> Constitutional provisions must be considered as limitations on legislative power where there is language of limitation or exception.... The provisions of section 11 [of article XIII] specifically vest the power of assessing utilities in the State Tax Commission. Therefore, that specific provision must be considered as a limitation on the power of the legislature to place the assessing power in any other officer or commission.

95 Utah at 111–12, 75 P.2d at 38. *Accord National Tunnel & Mines Co. v. Industrial Commission,* 99 Utah 39, 52, 102 P.2d 508, 514 (1940).

■ Accordingly, the Legislature is without power to confer the power of as-

sessing mines, which includes fixing valuation of mining property, on the tax division of the district courts. The statutory scheme establishing the tax divisions does not, however, purport to do so. It provides only that the tax division may review decisions, determinations, and orders of the Tax Commission, section 59–24–3 (Supp. 1983), and may "affirm, reverse, modify or remand any order of the state tax commission, and shall grant other relief, invoke such other remedies, and issue such orders ... as shall be appropriate." Section 59–24–4 (Supp.1983). The reasonable implication of these sections and, in view of *Southern Pacific Co., supra,* the only constitutionally permissible interpretation, is that in challenges to mining assessments, if the tax division of a district court finds a Tax Commission order in error, the tax division of the court may only reverse and remand the matter to the Commission for a proper determination pursuant to correct legal standards.

■ The County argues that a contrary result is mandated by subsections 59–24–3(1) & (2), which in certain cases provide for a trial de novo or an original proceeding in equity before the tax division. We disagree that the only reasonable interpretation of this provision is that power is delegated to the tax division to revalue or reassess property, and in any event, *Southern Pacific Co.* precludes such a delegation of power.

### IV.

■ Finally, the County argues that the district court erred in dismissing its second cross-claim, which prayed for an order directing the Tax Commission to make available to the County information concerning the valuation and assessment of Kennecott's properties.

After the district court filed its memorandum decision, the Legislature enacted "An Act Relating to Property Tax Assessments; Requiring the Tax Commission to Furnish Information Relating to the As-

sessment of State Assessed Properties ... to County Assessors." 1983 Utah Laws ch. 276. The act amends U.C.A., 1953, section 59–5–56, so that the information upon which the assessments and apportionments of mines are calculated shall be available for review by a county assessor upon request, and establishes penalties for unlawful disclosure of confidential information. Since this case must be remanded for further proceedings and since the provision dealing with the disclosure of information is procedural in nature, it will govern the disposition of the County's demand.

Reversed and remanded. No costs.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.